## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **THOMAS DAVID STRODE,** | : | |
| **Plaintiff** | : | **No. 1:21-cv-00291** |
| | : | |
| **v.** | : | **(Judge Kane)** |
| | : | |
| **DEANNA PARK, et al.,** | : | |
| **Defendants** | : | |

### MEMORANDUM

Presently before the Court are the motions to dismiss (Doc. No. 53) and for summary judgment (Doc. No. 63) filed by Defendants Deanna Park ("Park"), William Bechtold ("Bechtold"), John Flannery ("Flannery"), Jack Gorden ("Gorden"), David Keller ("Keller"), and Robert Ziobrowski ("Ziobrowski").  Pro se Plaintiff Thomas David Strode ("Plaintiff") has filed responses to both motions.  (Doc. Nos. 62, 67.)  The motions, therefore, are ripe for disposition.

## I.    BACKGROUND

### A.    Procedural History

Plaintiff, who was then incarcerated at the Franklin County Jail ("FCJ") in Chambersburg, Pennsylvania,[1] initiated the above-captioned action on February 17, 2021 by filing a complaint pursuant to 42 U.S.C. § 1983 in which he named FCJ as the sole Defendant. (Doc. No. 1.)  In a Memorandum and Order dated March 16, 2021, the Court granted Plaintiff leave to proceed in forma pauperis and dismissed his complaint for failure to state a claim upon which relief may be granted pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915(e)(2)(B)(ii).  (Doc. Nos. 7, 8.)  The Court granted Plaintiff leave to file an amended complaint within thirty (30) days.  (Doc. No. 8.)

---

[1] On August 30, 2021, Plaintiff notified the Court that he had been released from FCJ and provided his current address.  (Doc. No. 59.)

On April 1, 2021, Plaintiff filed an amended complaint, naming Deanna Park as the sole Defendant.  (Doc. No. 9.)  In an Order dated April 6, 2021, the Court directed service of the complaint upon Defendant Park.  (Doc. No. 10.)  On June 4, 2021, Defendant Park filed a motion to dismiss.  (Doc. No. 21.)  On June 14, 2021, however, Plaintiff filed a second amended complaint against Defendants Park, Bechtold, Keller, Flannery, Gorden, and Ziobrowski.  (Doc. No. 22.)  In an Order dated June 15, 2021, the Court denied Defendant Park's motion to dismiss as moot, directed her to answer or otherwise respond to the second amended complaint within fourteen (14) days, and directed service of the second amended complaint upon the other named Defendants.  (Doc. No. 24.)  The Court subsequently granted Defendant Park's motion for an extension of time to respond to the second amended complaint.  (Doc. Nos. 28, 29.)

Defendants filed their motion to dismiss on August 13, 2021 (Doc. No. 53) and filed their brief in support thereof on August 27, 2021 (Doc. No. 57).  On August 27, 2021, observing that Defendants raised the issue of whether Plaintiff properly exhausted his administrative remedies with respect to his claims in accordance with the PLRA, the Court issued a <u>Paladino</u> Order informing the parties that it would consider the exhaustion issue in the context of summary judgment and, by doing so, would consider matters outside the pleadings in its role as factfinder.[2]  (Doc. No. 58.)  The Court directed Defendants to file a statement of material facts that complied with Local Rule 56.1 within fourteen (14) days.  (<u>Id.</u>)  Defendants subsequently moved for and were granted an extension of time to file their statement of material facts.  (Doc. Nos. 60, 61.)  Plaintiff filed a response to the motion to dismiss on October 7, 2021.  (Doc. No. 62.)  On October 11, 2021, Defendants filed their motion for summary judgment and supporting

---

[2] <u>See</u> <u>Paladino v. Newsome</u>, 885 F.3d 203 (3d Cir. 2018).

materials regarding the issue of administrative exhaustion.  (Doc. Nos. 63, 64, 65.)  On October

12, 2021, the Court issued a second <u>Paladino</u> Order, directing Plaintiff to file a brief in

opposition and responsive statement of material facts within twenty-one (21) days.  (Doc. No.

66.)  On November 4, 2021, Plaintiff filed a brief in opposition.  (Doc. No. 67.)  However, he has

not filed a responsive statement of material facts.

### B.   Summary of Plaintiff's Second Amended Complaint

Plaintiff alleges that on July 20, 2020, Defendant Park was "facilitating court function[s]

when she sat in on a[n] attorney-client call which is a clear violation of client-lawyer relationship

confidentiality laws."  (Doc. No. 22 at 5.)  He also avers that on February 20, 2021, an unknown

officer in the mail room opened his legal mail outside of his presence.  (<u>Id.</u>)  Plaintiff further

asserts that on June 7, 2021, Defendant Gorden "started a new jail policy of discrimination and

segregation that his [superiors] ordered."  (<u>Id.</u> at 5-6.)  Specifically, Plaintiff alleges that

Defendant Gorden checked inmates' identification band colors so that he could "discriminat[e]

and segregat[e]" them based upon vaccination status, presumably referring to the COVID-19

vaccine.  (Doc. No. 22-2 at 7.)  He claims that red bands signify that inmates are not vaccinated,

and green bands signify that they are vaccinated.  (<u>Id.</u>)  Plaintiff avers that the "color of your

band [decides] when and with who you get your recreation."  (<u>Id.</u>)  Plaintiff further alleges that

Defendant Bechtold, as the Warden of FCJ, is responsible for ensuring that inmates' rights are

not violated.  (Doc. Nos. 22 at 5; 22-2 at 1.)  Finally, he asserts that the FCJ Prison Board, which

consists of Defendants Keller, Flannery, and Ziobrowski, are responsible for the overall

operation of FCJ and for ensuring that inmates' rights are upheld.  (Doc. No. 22-2 at 3-4.)  Based

on the foregoing, Plaintiff asserts violations of his First, Fourth, Fifth, Sixth, and Fourteenth

Amendment rights, as well as unspecified wiretapping laws and the Health Insurance Portability

and Accountability Act of 1996 ("HIPAA").  (Doc. No. 22 at 7.)  As relief, he seeks monetary

damages.  (Id.)

## II.     LEGAL STANDARDS

### A.     Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)

Federal notice and pleading rules require the complaint to provide the defendant notice of

the claim and the grounds upon which it rests.  See Phillips v. Cty. of Allegheny, 515 F.3d 224,

232 (3d Cir. 2008).  The plaintiff must present facts that, accepted as true, demonstrate a

plausible right to relief.  See Fed. R. Civ. P. 8(a).  Although Federal Rule of Civil Procedure

8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled

to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure

12(b)(6) for its "failure to state a claim upon which relief can be granted."  See Fed. R. Civ. P.

12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the Court accepts as true all

factual allegations in the complaint and all reasonable inferences that can be drawn from them,

viewed in the light most favorable to the plaintiff.  See Ashcroft v. Iqbal, 556 U.S. 662, 679

(2009); In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010).  To prevent

dismissal, all civil complaints must set out "sufficient factual matter" to show that their claims

are facially plausible.  See Iqbal, 556 U.S. at 678; Fowler v. UPMC Shadyside, 578 F.3d 203,

210 (3d Cir. 2009).  The plausibility standard requires more than a mere possibility that the

defendant is liable for the alleged misconduct: "[W]here the well-pleaded facts do not permit the

court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has

not 'show[n]' – 'that the pleader is entitled to relief.'"  See Iqbal, 556 U.S. at 679 (citing Fed. R.

Civ. P. 8(a)(2)).

Accordingly, the United States Court of Appeals for the Third Circuit has identified the following steps that a district court must take when reviewing a 12(b)(6) motion: (1) identify the elements that a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint that are "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (internal citations and quotation marks omitted). The Third Circuit has specified that in ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." See Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

In the context of pro se prisoner litigation, the court must be mindful that a document filed pro se is "to be liberally construed." See Estelle v. Gamble, 429 U.S. 97, 106 (1976). A pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can be dismissed for failure to state a claim only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972).

### B.    Motion for Summary Judgment

Federal Rule of Civil Procedure 56(a) requires the Court to render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an

otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. See id. at 248; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson, 477 U.S. at 257; Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am., 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the Court must view the facts and all reasonable inferences in favor of the nonmoving party. See Moore v. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement v. Consol. Rail Corp., 963 F.2d 599, 600 (3d Cir. 1992); White v. Westinghouse Elec. Co., 862 F.2d 56, 59 (3d Cir. 1988). In order to avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. When the party seeking summary judgment satisfies its burden under Rule 56 of identifying evidence that demonstrates the absence of a genuine issue of material fact, the nonmoving party is required to go beyond his pleadings with affidavits, depositions, answers to interrogatories, or the like in order to demonstrate specific material facts that give rise to a genuine issue. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." See Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986). When Rule 56 shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case that it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's

case necessarily renders all other facts immaterial."  See Celotex, 477 U.S. at 323; see also Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992).

As noted supra, when determining whether an issue of material fact exists, the Court must consider the evidence in the light most favorable to the nonmoving party.  See White, 862 F.2d at 59.  In doing so, the Court must accept the nonmovant's allegations as true and resolve any conflicts in his favor.  See id. (citations omitted).  However, a party opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted."  See L.R. 56.1.  A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a pro se litigant.  These rules apply with equal force to all parties.  See Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 245 (3d Cir. 2013) (noting that pro se parties "cannot flout procedural rules—they must abide by the same rules that apply to all other litigants").

## C.  Section 1983 Standard

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials.  See 42 U.S.C. § 1983.  The statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Id.  "Section 1983 is not a source of substantive rights, but merely a method to vindicate violations of federal law committed by state actors."  See Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002).  To state a cause of action under Section 1983, a plaintiff must allege that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States.  See Harvey v. Plains Twp. Police Dep't, 421 F.3d 185, 189 (3d Cir. 2005) (quoting West v. Atkins, 487 U.S. 42, 48 (1988)).

## III.   STATEMENT OF MATERIAL FACTS[3]

Plaintiff was incarcerated at FCJ from May 11, 2020 until August 18, 2021.  (Doc. No. 64 ¶ 1.)  All inmates at FCJ are provided with the Inmate Handbook.  (Id. ¶ 2.)  Pursuant to FCJ's procedures, inmates may submit request slips "to address any questions, problems[,] or concerns they may have."  (Id. ¶ 4.)  Such slips "are forwarded to the staff member or department that has the specific responsibility for handling matters related to the inmate's situation, or who can answer the inmate's request most appropriately."  (Id. ¶ 5.)

---

[3] The Local Rules provide that in addition to the requirement that a party file a brief in opposition to the moving party's brief in support of its motion, "[t]he papers opposing a motion for summary judgment shall include a separate, short and concise statement of material facts responding to the numbered paragraphs set forth in the statement [of material facts filed by the moving party] . . . as to which it is contended that there exists a genuine issue to be tried."  See M.D. Pa. L.R. 56. 1.  The Rule further requires the inclusion of references to the parts of the record that support the statements.  See id.  Finally, the Rule states that the statement of material facts required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.  See id.  Unless otherwise noted, the background herein is derived from Defendants' Rule 56.1 statement of facts. (Doc. No. 64.)  Plaintiff has not filed a response to Defendants' statement of material facts in compliance with Local Rule 56.1.  Accordingly, the Court deems the facts set forth by Defendants to be undisputed.  See Fed. R. Civ. P. 56(e)(2); M.D. Pa. L.R. 56.1; United States v. Alberto, No. 3:18-cv-1014, 2020 WL 730316, at *2 (M.D. Pa. Feb. 13, 2020) (concluding that the "[f]ailure to file this [responsive statement of material facts] results in admission of the moving party's statement of facts").

FCJ's grievance procedure may be used for inmates to submit complaints regarding "alleged violations of rights or policies." (Id. ¶ 6.)  "Inmates should use the grievance procedure only after addressing the problem first with their Housing Unit Officer or other staff members." (Id. ¶ 7.)  The grievance procedure at FCJ consists of three (3) steps.  (Id. ¶ 9.)  First, an inmate submits a grievance to the Director of Inmate Management, who will review and respond to the grievance.  (Id. ¶¶ 8, 10.)  The inmate may appeal the Director of Inmate Management's response "to a committee comprised of the deputy wardens or designees." (Id. ¶ 11.)  Finally, the inmate may appeal the committee's decision "to the Warden and/or County Administrator/Chief Clerk or their designees for their response."  (Id. ¶ 12.)  At this third step, a grievance "may be denied, granted, or deferred for a formal hearing," and this decision is final. (Id. ¶¶ 13-14.)

### A.    Facts Regarding Grievances Concerning Defendant Park

On July 23, 2020, Plaintiff submitted a grievance in which he complained that on July 20, 2020, Defendant Park had been present in the room during a call Plaintiff had with his attorney. (Id. ¶ 15.)  Plaintiff claimed that this was a "clear and deliberate violation of [his] client-lawyer confidentiality laws."  (Id.)  In response, FCJ stated: "If you have a concern about confidentiality, you should bring [it] to the attention of your attorney and jail staff to determine whether your concern is legitimate." (Id. ¶ 16.)  Plaintiff did not appeal this response to the second step of the grievance process.  (Id. ¶ 17.)

On August 8, 2020, Plaintiff submitted a request slip in which he stated that on August 3, 2020, Defendant Park sat in on another inmate's call with his public defender, who is the same public defender representing Plaintiff in his criminal proceedings.  (Id. ¶ 18.)  Plaintiff asked for printed copy of the request slip for his file.  (Id.)  In response, Deputy Warden Weller stated:

"Jail staff facilitate court functions, including lawyer videochats.  Discuss concerns with your attorney, as any lawyer is able to use professional visitation instead of videochats.  Copies of electronic forms are not provided."  (Id. ¶ 19.)  This request slip "was submitted through the request slip process rather than the grievance process and complains about the phone call of another inmate rather than [Plaintiff's] own phone call."  (Id. ¶ 20.)

On August 27, 2020, Plaintiff submitted another grievance, stating that he did not get a response to his July 23, 2020 grievance until more than ten (10) days had passed.  (Id. ¶ 21.) Plaintiff stated that he "thought it best to start this appeal on a new grievance in hopes you follow your own policy and inmate rights and get back to me within the 10 days."  (Id.)  Plaintiff again complained about Defendant Park sitting in during attorney-client calls.  (Id.)  In response, FCJ stated that Plaintiff's grievance was a duplicate of the one he had previously submitted.  (Id. ¶ 22.)  Plaintiff did not appeal that response to the second step of the grievance process.  (Id. ¶ 23.)

### B.      Facts Regarding Grievances Concerning the Opening of Legal Mail

On February 25, 2021, Plaintiff submitted a request slip asking for a copy of an incident report from February 20, 2021 concerning the opening of his legal mail outside of his presence. (Id. ¶ 25.)  Deputy Warden Weller responded that copies of incident reports are not provided. (Id. ¶ 26.)  Plaintiff's request "asked only for a copy of an incident report but did not allege that any of his rights were violated."  (Id. ¶ 27.)

On June 9, 2021, Plaintiff submitted a grievance regarding the opening of his legal mail outside of his presence.  (Id. ¶ 28.)  He averred that he had submitted a grievance regarding the issue on February 20, 2021 and had yet to receive a response.  (Id.)  Plaintiff indicated that he had made several requests for the name of the individual who worked in the mail room that day,

but all of his requests had been denied.  (Id.)  In response, FCJ stated: "Inquiring the whereabouts of a former grievance should be addressed on a request slip."[4]  (Id. ¶ 29.)  Plaintiff appealed, stating: "This grievance is not just about a missing grievance please read it and if you still don't understand ask me."  (Id. ¶ 30.)  Deputy Warden Weller responded: "I found no pending grievances from 2/20/21 but can address issue on this form.  There is no indication that legal mail was opened intentionally."  (Id. ¶ 31.)  Plaintiff did not appeal this response to the third step of the grievance process.  (Id. ¶ 32.)

### C.    Facts Regarding Grievances Concerning Defendants Gorden, Bechtold, Keller, Flannery, and Ziobrowski

On June 7, 2021, Plaintiff submitted a grievance stating that earlier that day, Defendant Gorden came around checking the color of inmates' ID bands "so that he could follow orders" on behalf of Defendants Bechtold, Keller, Flannery, and Ziobrowksi.  (Id. ¶ 34.)  Plaintiff averred that this check violated inmates' constitutional rights, as well as their rights under HIPAA.  (Id.)  Plaintiff claimed that this action turned their ID bands into "vaccine passports" and that this had nothing to do "with health or security as the officers and staff are clearly not required to get" the vaccine.  (Id.)  In response, FCJ stated: "Colored ID bands are not being done at this time per administration."  (Id. ¶ 35.)  Plaintiff appealed, and Deputy Warden Weller stated: Color of band is not indicative of vaccination status restrictions."  (Id. ¶¶ 36-37.)  Plaintiff appealed, stating: "I can still tell who is or isn't vaccinated your response was to only part of the issue so some of the ID bands do still indicate vaccination status that's a violation still."  (Id. ¶ 38.)  In response, FCJ denied the appeal and made "no change to the Step I and Step II responses."  (Id. ¶ 39.)

---

[4] Defendants do not concede that Plaintiff filed an earlier grievance; rather, it is their position that "Plaintiff did not submit a February 20, 2021 grievance, and Defendants believe he may be intending to refer to his February 25, 2021 request slip."  (Doc. No. 64 ¶ 29 n.3.)

IV.     **DISCUSSION**

A.      **Plaintiff's HIPAA Claim**

Plaintiff vaguely asserts that the use of colored bands to denote inmates' vaccination status violates his rights under the HIPAA.  However, "there is no private right of action under HIPAA."  See Dominic J. v. Wyoming Valley West High Sch., 362 F. Supp. 2d 560, 573 (M.D. Pa. 2005) (citations omitted).  Rather, "HIPAA limits enforcement of the statute to the Secretary of Health and Human Services."  See Acara v. Banks, 470 F.3d 569, 571 (5th Cir. 2006).  Thus, Plaintiff cannot maintain a private cause of action pursuant to the HIPAA, and the Court will grant Defendants' motion to dismiss with respect to this claim.

B.      **Wiretap Claims**

Plaintiff also vaguely asserts that Defendant Park's alleged actions violated various wiretap laws.  The Federal Wiretap Act created a private cause of action for any person whose communication is intercepted or disclosed in a manner prohibited by the Act.  See 28 U.S.C. §§ 2511, 2520(a).  To allege a prima facie case under the Act, a plaintiff must show that the defendant intentionally intercepted, endeavored to intercept, or procured another person to intercept the contents of an electronic communication using a device.  See In re Google Inc. Cookie Placement Consumer Privacy Litig., 806 F.3d 125, 135 (3d Cir. 2015).  Moreover, to allege a prima facie case under Pennsylvania's Wiretap Act, "a claimant must demonstrate that: (1) he engaged in a communication; (2) he possessed an expectation that the communication would not be intercepted; (3) his expectation was justifiable under the circumstances; and (4) the defendant attempted to, or did successfully, intercept the communication, or encouraged another to do so."  See Matenkoski v. Greer, 213 A.3d 1018, 1028-29 (Pa. Super. Ct. 2019) (citing Agnew v. Dupler, 717 A.2d 519, 523 (Pa. 1998)).  Plaintiff's second amended complaint,

however, is devoid of any allegations suggesting that Defendant Park used a device to intercept or attempt to intercept the contents of his telephone call with his attorney. The Court, therefore, will grant Defendants' motion to dismiss with respect to Plaintiff's wiretap claims.

### C. First Amendment Claims

#### 1. Opening of Legal Mail

Plaintiff asserts that his First Amendment rights were violated by an unnamed officer when that officer opened his legal mail outside of his presence on one occasion. "[P]risoners, by virtue of their incarceration, do not forfeit their First Amendment right to use of the mails." See Jones v. Brown, 461 F.3d 353, 358 (3d Cir. 2006) (quoting Bieregu v. Reno, 59 F.3d 1445, 1452 (3d Cir. 1995), overruled on other grounds by Lewis v. Casey, 518 U.S. 343 (1996)). However, "while a 'pattern or practice' of opening legal mail outside the presence of an inmate is sufficient to state a First Amendment violation . . ., a single instance is usually not enough." See Gibson v. Erickson, 830 F. App'x 372, 373 (3d Cir. 2020) (citing Brown, 461 F.3d at 359 and Bieregu, 59 F.3d at 1452); see also Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003) (noting that "an isolated incident of mail tampering is usually insufficient to establish a constitutional violation"). Moreover, Plaintiff has alleged no facts that the unnamed officer intentionally opened his legal mail on that one occasion. See Beese v. Liebe, 51 F. App'x 979, 981 (7th Cir. 2002) (dismissing the inmate-plaintiff's First Amendment claim based upon allegations that four (4) pieces of legal mail had been opened outside of his presence because the inmate-plaintiff did not show that the mail had been intentionally opened). The Court, therefore, will grant Defendants' motion to

dismiss with respect to Plaintiff's First Amendment claim regarding the opening of his legal mail on one occasion.[5]

### 2.     Access to the Courts

Defendants have construed Plaintiff's second amended complaint as raising a First Amendment access to the courts claim.  Prisoners maintain a "fundamental constitutional right of access to the courts."  See Lewis v. Casey, 518 U.S. 343, 346 (1996).  Moreover, a pretrial detainee, such as Plaintiff was when he initiated the above-captioned action, has a right to access the courts with respect to receiving legal assistance and participating in preparing a defense against pending criminal charges.  See Prater v. City of Phila., 542 F. App'x 135, 136-37 (3d Cir. 2013).  To set forth an access to the courts claim, a plaintiff must allege "actual injury, such as the loss or rejection of a legal claim."  See Oliver v. Fauver, 118 F.3d 175, 177 (3d Cir. 1997).  Moreover, the plaintiff must allege that this lost or rejected legal claim is not frivolous.  See Monroe v. Beard, 536 F.3d 198, 205 (3d Cir. 2008).

It is well established that "the provision of lawyers is one means by which a state may provide prisoners with meaningful access to courts."  See Peterkin v. Jeffes, 855 F.2d 1021, 1042 (3d Cir. 1988).  The public docket for Plaintiff's criminal proceedings indicates that he is

---

[5] Plaintiff also asserts that the opening of his legal mail violated his Fourth and Fourteenth Amendment rights.  However, Plaintiff does not allege that the legal mail was seized from him, and in any event, "the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell."  See Hudson v. Palmer, 468 U.S. 517, 526 (1984). Plaintiff, therefore, cannot maintain his Fourth Amendment claim.  See Tindell v. Beard, 351 F. App'x 591, 594 (3d Cir. 2009).  Moreover, Plaintiff cannot maintain a Fourteenth Amendment due process violation if there exists a meaningful post-deprivation remedy.  See Hudson, 468 U.S. at 533.  The Third Circuit has previously held that a prison's grievance program provides an adequate post-deprivation remedy to satisfy due process.  See Tillman v. Lebanon Cty. Corr. Facility, 221 F.3d 410, 422 (3d Cir. 2000).

represented by counsel.[6]  See Commonwealth v. Strode, Docket No. CP-28-CR-0000604-2020 (Franklin Cty. C.C.P.).  Plaintiff's second amended complaint is devoid of any allegations that he suffered any actual injury from Defendants' alleged actions.  The Court, therefore, will grant Defendants' motion to dismiss with respect to Plaintiff's First Amendment access to the courts claim.

**D.      Fifth Amendment Claim**

Plaintiff vaguely asserts that Defendant Park's actions violated his Fifth Amendment right to not incriminate himself.  The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself."  See U.S. Const. amend V.  This right, however, is a "fundamental trial right of criminal defendants," and "a constitutional violation occurs only at trial."  See United States v. Verdugo-Urquidez, 494 U.S. 259, 264 (1990).  Plaintiff's second amended complaint is devoid of any allegations that Defendant Park compelled his speech and that Plaintiff made statements against his own interest.  Moreover, nothing in the second amended complaint suggests that any statements made by Plaintiff during his phone call with his attorney were used against him in criminal proceedings.  The Court, therefore, will grant Defendants' motion to dismiss with respect to Plaintiff's Fifth Amendment claim.

**E.      Sixth Amendment Claim**

Plaintiff maintains that Defendant Park violated his Sixth Amendment rights by remaining in the room during a phone call with his attorney.  The Sixth Amendment provides a pretrial detainee the right to counsel to defend against a criminal action.  See Benjamin v. Fraser,

---

[6] The Court may take judicial notice of Plaintiff's public docket.  See Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006).

264 F.3d 175, 186 (2d Cir. 2001)).  The Supreme Court has held that "inmates must have a

reasonable opportunity to seek and receive the assistance of attorneys and that prison regulations

and practices that unjustifiably obstruct the availability of professional representation . . . are

invalid."  See id. at 184 (quoting Procunier v. Martinez, 416 U.S. 396, 419 (1974)) (internal

quotation marks omitted).  Unlike a First Amendment access to the courts claim, a plaintiff need

not show actual injury to state a claim of unreasonable interference with his Sixth Amendment

right to counsel.  See id. at 185.  While the Third Circuit has not ruled upon this issue in a

precedential opinion, it has previously concluded that a district court had failed to address a

pretrial detainee's Sixth Amendment interference with the right to counsel claim and disagreed

with the implicit conclusion that such a claim required a showing of actual injury.  See Prater v.

City of Phila., 542 F. App'x 135, 138 & n.5 (3d Cir. 2013) (citing Benjamin, 264 F.3d at 185).

Moreover, "[c]ourts within this Circuit have recognized that prisoners have a right to confidential

communication with their attorney."  See Talley v. Varner, No. 3:17-cv-965, 2018 WL 7890011,

at *5 (M.D. Pa. Dec. 10, 2018) (collecting cases), report and recommendation adopted, 2019 WL

1405403 (M.D. Pa. Mar. 28, 2019), aff'd, 786 F. App'x 326 (3d Cir. 2019).

     The Court's reading of Plaintiff's second amended complaint, as well as his grievances,

leads the Court to conclude that Plaintiff has set forth a plausible Sixth Amendment claim

against Defendant Park.  While Plaintiff's second amended complaint does not explicitly state

that he was talking to his public defender, his grievances and request slips, copies of which have

been submitted by both Plaintiff and Defendants (Doc. Nos. 15, 16, 17, 64-6, 64-7, 64-8), set

forth that his claim involves Defendant Park remaining in the room during his call with his

public defender.  The Court, therefore, declines to grant Defendants' motions to dismiss and for

summary judgment on the basis that Plaintiff has not set forth a plausible Sixth Amendment claim.

### F.   Fourteenth Amendment Equal Protection Claim

Plaintiff alleges that Defendant Gorden engaged in discrimination and segregation through the use of colored identification bands to denote vaccination status.  Plaintiff avers that the "color of your band [decides] when and with who you get your recreation."  (Doc. No. 22-2 at 7.)  The Court construes Plaintiff's second amended complaint to be raising a Fourteenth Amendment equal protection claim against Defendant Gorden.

The Equal Protection Clause requires all persons "similarly situated" to be treated alike by state actors.  See City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985).  Traditionally, "[i]n order to establish a prima facie case of discrimination under the Equal Protection Clause, [plaintiffs] need[] to prove that they were members of a protected class [such as race or gender] and that they received different treatment than that received by similarly-situated individuals."  See Oliveira v. Twp. of Irvington, 41 F. App'x 555, 559 (3d Cir. 2002).  However, where a plaintiff alleges that he alone "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment," he may raise a "class of one" equal protection claim.  See Engquist v. Or. Dep't of Agric., 553 U.S. 591, 598 (2008).  To maintain such a claim, a plaintiff must establish that he has been irrationally singled out for disparate treatment.  See id.  "[A]t the very least, to state a claim under [a class of one theory], a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment."  Mosca v. Cole, 217 F. App'x 158, 164 (3d Cir. 2007).  When alleging the existence of similarly situated individuals, plaintiffs "cannot use allegations . . . that

amount to nothing more than 'conclusory, boilerplate language' to show that he may be entitled to relief," and "bald assertion[s] that other[s] . . . were treated in a dissimilar manner" will not suffice.  See Young v. New Sewickley Twp., 160 F. App'x 263, 266 (3d Cir. 2005) (citing Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005)).

In the instant case, Plaintiff does not state that he is a member of a protected class. Indeed, prisoners are not a protected class of individuals.  See Abdul-Akbar v. McKelvie, 239 F.3d 307, 317 (3d Cir. 2011).  Moreover, nothing in the second amended complaint suggests that Defendant Gorden intentionally treated Plaintiff differently from other inmates or treated other inmates more favorably in any respect.  Plaintiff's allegations concerning "discrimination" and "segregation" are simply "bald assertions" that failure to allege "occasions and circumstances" of different treatment.  See Young, 160 F. App'x at 266.  Plaintiff's Fourteenth Amendment claim against Defendant Gorden will, therefore, be dismissed.

### G.    Supervisory Liability Claims

Plaintiff alleges that Defendant Bechtold, as the Warden of FCJ, is responsible for ensuring that inmates' rights are not violated.  (Doc. Nos. 22 at 5; 22-2 at 1.)  Finally, he asserts that the FCJ Prison Board, which consists of Defendants Keller, Flannery, and Ziobrowski, are responsible for the overall operation of FCJ and for ensuring that inmates' rights are upheld. (Doc. No. 22-2 at 3-4.)  Based on the foregoing, it appears that Plaintiff seeks to proceed against Defendants Bechtold, Keller, Flannery, and Ziobrowski based upon their respective supervisory positions.

Supervisors "may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior."  See Iqbal, 556 U.S. at 676.  The Third Circuit has noted that there are two theories of supervisory liability applicable to claims brought pursuant to

18

§ 1983: (1) "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations"; and (2) policymakers may also be liable under § 1983 "if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, practice[,] or custom which directly caused [the] constitutional harm.'"  See A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004).  With respect to the second theory of liability, the plaintiff must allege that: "(1) the existing policy or practice created an unreasonable risk of [constitutional] injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice."  See Beers-Capitol v. Whetzel, 256 F.3d 120, 134 (3d Cir. 2001) (citing Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989)).  At a minimum, supervisory liability can be imposed "only where there are both (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances under which the supervisor's inaction could be found to have communicated a message of approval to the offending subordinate."  See Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986).

In the instant case, Plaintiff's second amended complaint fails to set forth plausible supervisory liability claims against Defendants Bechtold, Keller, Flanner, and Ziobrowski.  The second amended complaint is devoid of allegations that these Defendants had knowledge of and acquiesced in any alleged constitutional violations by their subordinates.  See A.M., 372 F.3d at 586.  Moreover, Plaintiff fails to identify a policy that allegedly caused the violation of his constitutional rights.  See McTernan v. City of York, 564 F.3d 636, 658 (3d Cir. 2009).  Thus,

the Court will grant Defendants' motion to dismiss with respect to Plaintiff's claims against

Defendants Bechtold, Keller, Flannery, and Ziobrowski.

### H.  Administrative Exhaustion

As noted <u>supra</u>, only Plaintiff's Sixth Amendment claim against Defendant Park remains.

Defendants assert that Plaintiff failed to exhaust his administrative remedies with respect to this

claim because he did not appeal any grievances related to this claim past the first step of FCJ's

grievance process.  (Doc. No. 65 at 6-8.)  Defendants also assert that Plaintiff "has not and

cannot show that his remedies were unavailable due to some affirmative misconduct by

Defendants [because] [t]he record clearly reflects that FCJ responded to all related grievances."

(<u>Id.</u> at 12.)

Pursuant to the PLRA, a prisoner must pursue all available avenues of relief through the

applicable grievance system before initiating a federal civil rights action.  <u>See</u> 42 U.S.C.

§ 1997e(a); <u>Booth v. Churner</u>, 532 U.S. 731, 741 n.6 (2001) ("[A]n inmate must exhaust

irrespective of the forms of relief sought and offered through administrative avenues").  Section

1997e provides, in relevant part, that "[n]o action shall be brought with respect to prison

conditions under [S]ection 1983 of this title, or any other [f]ederal law, by a prisoner confined in

any jail, prison, or other correctional facility until such administrative remedies as are available

are exhausted."  <u>See</u> 42 U.S.C. § 1997e(a).  The exhaustion requirement is mandatory.  <u>See</u>

<u>Williams v. Beard</u>, 482 F.3d 637, 639 (3d Cir. 2007); <u>see also</u> <u>Booth</u>, 532 U.S. at 742 (holding

that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the

relief offered through administrative procedures").  Moreover, while Plaintiff was released from

prison after initiating the above-captioned action, he is still bound by the exhaustion requirement

because he has raised claims concerning events that occurred prior to his release.[7]  See Ahmed v. Dragovich, 297 F.3d 201, 210 (3d Cir. 2002).

The Third Circuit has further provided that there is no futility exception to Section 1997e's exhaustion requirement.  See Nyhuis v. Reno, 204 F.3d 65, 75-76 (3d Cir. 2000).  Courts have typically required across-the-board exhaustion by inmates seeking to pursue claims in federal court.  See id.  Additionally, courts have interpreted this exhaustion requirement as including a procedural default component, holding that inmates must fully satisfy the administrative requirements of the inmate grievance process before proceeding with a claim in federal court.  See Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004); see also Oriakhi v. United States, 165 F. App'x 991, 993 (3d Cir. 2006) (providing that "there appears to be unanimous circuit court consensus that a prisoner may not fulfill the PLRA's exhaustion requirement by exhausting administrative remedies after the filing of the complaint in federal court").  Courts have also concluded that inmates who fail to complete the prison grievance process in a full and timely manner are barred from subsequently litigating claims in federal court.  See, e.g., Booth v. Churner, 206 F.3d 289 (3d Cir. 2000); Bolla v. Strickland, 304 F. App'x 22 (3d Cir. 2008).

This broad rule favoring full exhaustion allows for a narrowly-defined exception; if the actions of prison officials directly caused the inmate's procedural default as to a grievance, the

---

[7] The Court recognizes that the Third Circuit recently concluded that the PLRA's exhaustion requirement did not apply to a situation where a plaintiff had been released from prison during the pendency of his lawsuit and, after release, filed a third and fourth amended complaint.  See Garrett v. Wexford Health, 938 F.3d 69, 84 (3d Cir. 2019).  The Garrett court noted that, in that instance, the plaintiff's "status as a non-prisoner at the time he filed the [third amended complaint was] determinative of the Medical Defendants' administrative exhaustion defense."  See id. at 87.  In the instant case, however, Plaintiff is proceeding on the second amended complaint he filed while still incarcerated.  The Court concludes that Garrett is inapposite to the above-captioned case and, therefore, does not apply to excuse Plaintiff from satisfying the PLRA's exhaustion requirement.

inmate will not be required to comply strictly with this exhaustion requirement.  See Camp v. Brennan, 219 F.3d 279 (3d Cir. 2000).  However, courts also recognize a clear "reluctance to invoke equitable reasons to excuse [an inmate's] failure to exhaust as the statute requires."  See Davis v. Warman, 49 F. App'x 365, 368 (3d Cir. 2002).  Thus, an inmate's failure to exhaust will be excused only "under certain limited circumstances," see Harris v. Armstrong, 149 F. App'x 58, 59 (3d Cir. 2005), and an inmate may defeat a claim of failure to exhaust only by showing "he was misled or that there was some extraordinary reason he was prevented from complying with the statutory mandate."  See Warman, 49 F. App'x at 368.

In the absence of competent proof that an inmate was misled by corrections officials, or some other extraordinary circumstances warranting a departure from strict compliance with the exhaustion requirement, courts frequently reject inmate requests for their failure to exhaust to be excused.  An inmate, therefore, may not excuse a failure to comply with these grievance procedures in a timely manner by simply claiming that his efforts constituted "substantial compliance" with this statutory exhaustion requirement.  See Harris, 149 F. App'x at 59. Furthermore, an inmate may not avoid this exhaustion requirement by merely alleging that the administrative policies were not clearly explained to him.  See Warman, 49 F. App'x at 368. Consequently, an inmate's confusion regarding these grievances procedures does not, alone, excuse a failure to exhaust.  See Casey v. Smith, 71 F. App'x 916 (3d Cir. 2003); see also Marsh v. Soares, 223 F.3d 1217, 1220 (10th Cir. 2000) ("[I]t is well established that 'ignorance of the law, even for an incarcerated pro se petitioner, generally does not excuse prompt filing.'" (citations omitted)).

The Supreme Court has considered what renders administrative remedies unavailable to an inmate such that a failure to exhaust may be excused.  See Ross v. Blake, 578 U.S. 632

(2016).  The Court noted "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief."  See id. at 643.  First, an administrative procedure is not available "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates."  See id.  Second, a procedure is not available when it is "so opaque that it becomes, practically speaking, incapable of use."  See id.  Finally, a procedure is unavailable when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misinterpretation, or intimidation."  See id. at 644.  However, "once the defendant has established that the inmate failed to resort to administrative remedies, the onus falls on the inmate to show that such remedies were unavailable to him."  See Rinaldi v. United States, 904 F.3d 257, 268 (3d Cir. 2018).  The Third Circuit recently established that:

> to defeat a failure-to-exhaust defense based on a misrepresentation by prison staff, an inmate must show (1) that the misrepresentation is one which a reasonable inmate would be entitled to rely on and sufficiently misleading to interfere with a reasonable inmate's use of the grievance process, and (2) that the inmate was actually misled by the misrepresentation.

See Hardy v. Shaikh, 959 F.3d 578, 588 (3d Cir. 2020).

While Plaintiff has not responded to Defendants' motion for summary judgment, he previously filed a document in which he asserted that administrative exhaustion should be waived because officials at FCJ failed to follow their own rules and regulations by not responding to his grievances within ten (10) business days.  (Doc. No. 46.)  The record reflects that on July 23, 2020, Plaintiff submitted a grievance form in which he asserted that Defendant Park sat in on his call with his attorney on July 20, 2020.  (Doc. No. 64-6 at 1.)  The grievance form clearly states that the Correctional Treatment Specialist, who is the individual responsible for responding at the first step, "[m]ust respond within 10 business days."  (Id. at 3.)  Plaintiff's

grievance was not responded to until August 13, 2020, sixteen (16) business days after he submitted the grievance.  (Id.)  Plaintiff subsequently submitted a request slip about his concern (Doc. No. 64-7), and he submitted another grievance on August 27, 2020, which was marked as a duplicate of his July 23, 2020 grievance (Doc. No. 64-8).

The PLRA not only requires that prisoners comply with the procedural aspects of a grievance system.  It also requires prisons to comply with the procedural aspects of the system they created.  See Shifflett v. Korszniak, 934 F.3d 356, 365 (3d Cir. 2019).  Consequently, "[a]s soon as a prison fails to respond to a properly submitted grievance or appeal within the time limits prescribed by its own policies, it has made its administrative remedies unavailable and the prisoner has fully discharged the PLRA's exhaustion requirement."  See id.  In the instant case, the record clearly reflects that Plaintiff did not receive a response to his grievance within the specified time limit.  "At that moment he obtained the right to come into federal court." Shifflett, 934 F.3d at 366.  Plaintiff's decision to subsequently submit a request slip and a second grievance concerning the same issue "did not waive or negate his successful exhaustion of remedies as required by the PLRA."  See id.  The Court, therefore, declines to grant Defendants summary judgment on the basis that Plaintiff failed to exhaust his administrative remedies with respect to his Sixth Amendment claim against Defendant Park.

### I.      Qualified Immunity

Defendants also assert that, to the extent Plaintiff has sued them in their individual capacity, they are entitled to qualified immunity.  (Doc. No. 57 at 17-21.)  As set forth supra, only Plaintiff's Sixth Amendment claim against Defendant Park remains.  The Court, therefore, will consider whether Defendant Park is entitled to qualified immunity.

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). In order to determine whether a right was clearly established, the Court must ask "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." See Schmidt v. Creedon, 639 F.3d 587, 598 (3d Cir. 2011). "If it would not have been clear to a reasonable officer what the law required under the facts alleged, then he is entitled to qualified immunity." Id. Stated differently, for a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." See al-Kidd, 563 U.S. at 741. As the Supreme Court recently noted, "[t]his demanding standard protects 'all but the plainly incompetent or those who knowingly violate the law.'" See District of Columbia v. Wesby, 138 S. Ct. 577, 589 (2018) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)). Accordingly, "there must be sufficient precedent at the time of action, factually similar to the plaintiff's allegations, to put [the] defendant on notice that his or her conduct is constitutionally prohibited." See Mammaro v. N.J. Div. of Child Prot. & Permanency, 814 F.3d 164, 169 (3d Cir. 2016) (quoting McLaughlin v. Watson, 271 F.3d 566, 572 (3d Cir. 2001)). To make this determination, the Court "look[s] first for applicable Supreme Court precedent." See id. "Even if none exists, it may be possible that a 'robust consensus of cases of persuasive authority' in the Court of Appeals could clearly establish a right for purposes of qualified immunity." Id. (quoting Taylor v. Barkes, 575 U.S. 822, 826 (2015)).

"[T]he Sixth Amendment, of course, protects the confidentiality of communications between the accused and his attorney." United States v. Henry, 447 U.S. 264, 295 (1980)

(Rehnquist, J., dissenting); <u>see also</u> <u>Weatherford v. Bursey</u>, 429 U.S. 545, 564 (1977) (Marshall, J., dissenting) (noting that "insofar as the Sixth Amendment establishes an independent right to confidential communications with a lawyer, that right by definition is invaded when a government agent attends meetings of the defense team at which defense plans are reviewed"). In 1989, the United States Court of Appeals for the Eighth Circuit agreed to the denial of qualified immunity with respect to a claim brought by pretrial detainees that they were required to meet their attorneys in public areas of the jail, where their communications could be overheard by corrections officers and other prisoners.  <u>See</u> <u>Johnson-El v. Schoemehl</u>, 878 F.2d 1043, 1052-53 (8th Cir. 1989).  The court concluded that "such conditions impede[d] the detainees' ability to prepare for trial, jeopardize[d] the confidentiality of their attorney-client communications[,] and invade[d] their right to privacy." <u>See id.</u> at 1053 (quoting <u>Moore v. Janing</u>, 427 F. Supp. 567, 576 (D. Neb. 1976), <u>abrogated in part on other grounds by</u> <u>Bell v. Wolfish</u>, 441 U.S. 520 (1979)).  Furthermore, the United States Courts of Appeals for the First and Second Circuits have noted that private communications between attorneys and clients form the essence of the Sixth Amendment right to counsel.  <u>See</u> <u>Greater Newburyport Clamshell Alliance v. Pub. Serv. Co. of N.H.</u>, 883 F.2d 13, 21 (1st Cir. 1988); <u>United States v. Rosner</u>, 485 F.2d 1213, 1224 (2d Cir. 1973).  Moreover, the United States Court of Appeals for the Ninth Circuit has noted that "[a] criminal defendant's ability to communicate candidly and confidentially with his lawyer is essential to his defense.  In American criminal law, the right to privately confer with counsel is nearly sacrosanct." <u>See</u> <u>Nordstrom v. Ryan</u>, 762 F.3d 903, 910 (9th Cir. 2014).  Likewise, the United States Court of Appeals for the Fifth Circuit has concluded that incarcerated individuals have a right to "uninhibited, confidential communications" with their attorneys.  <u>See</u> <u>Taylor v. Sterrett</u>, 532 F.2d 462, 73 (5th Cir. 1976).

In light of this body of case law, the Court does not agree with Defendants that "it cannot be said that [Defendant Park's] conduct was a clear violation of [Plaintiff's] right to confidential communication with counsel." (Doc. No. 57 at 20.) Rather, the Court concludes that Plaintiff had a clearly established right, protected by the Sixth Amendment, to confidential communications with his attorney while housed as a pretrial detainee at the FCJ. Moreover, as discussed <u>supra</u> in Section IV.E, Plaintiff has adequately pled a violation of that clearly established right. The Court, therefore, declines to grant Defendant Park qualified immunity from this claim.

### J.     Leave to Amend

Courts are cautioned that because of the applicable pleading standard, a plaintiff should generally be granted leave to amend before dismissing a claim that is merely deficient. <u>See</u> <u>Grayson v. Mayview State Hosp.</u>, 293 F.3d 103, 108 (3d Cir. 2002). The federal rules allow for liberal amendment in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits." <u>See</u> <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962) (citations and internal quotations omitted). The Court may deny a motion to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." <u>See</u> <u>id.</u> The Court must also determine that a proposed amendment would be futile if the complaint, as amended, would not survive a motion to dismiss for failure to state a claim. <u>See</u> <u>In re NAHC, Inc. Sec. Litig.</u>, 306 F.3d 1314, 1332 (3d Cir. 2002). Based on the foregoing, the Court concludes that it would be futile to permit Plaintiff to file a third amended complaint with respect to his HIPAA claim, his wiretap claims, his First Amendment claims, his Fifth Amendment claim, his Fourteenth Amendment equal protection

claim, and his claims against Defendants Bechtold, Keller, Flannery, and Ziobrowski. Accordingly, the above-captioned case will proceed only as to Plaintiff's Sixth Amendment claim against Defendant Park.

## V.    CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part Defendants' motion to dismiss.  (Doc. No. 53.)  The motion will be denied as to Plaintiff's Sixth Amendment claim against Defendant Park and granted as to all other claims.  Plaintiff will not be permitted to file a third amended complaint in this matter.  Defendants' motion for summary judgment on the basis of administrative exhaustion (Doc. No. 63) will be denied with respect to Plaintiff's Sixth Amendment claim and denied as moot with respect to his other claims.  An appropriate Order follows.