**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **THOMAS DAVID STRODE,** | : | |
| **Plaintiff** | : | **No. 1:21-cv-00291** |
| | : | |
| **v.** | : | **(Judge Kane)** |
| | : | |
| **DEANNA PARK, et al.,** | : | |
| **Defendants** | : | |

**MEMORANDUM**

Presently before the Court are the parties' motions for reconsideration of the Court's

December 23, 2021 Memorandum and Order, which granted in part and denied in part the

Defendants' motion to dismiss and for summary judgment.  For the reasons set forth below, the

Court will deny the parties' motions for reconsideration.

**I.      BACKGROUND**

On February 17, 2021, Plaintiff, who was then incarcerated at the Franklin County Jail

("FCJ") in Chambersburg, Pennsylvania, commenced the above-captioned action by filing a

complaint pursuant to 42 U.S.C. § 1983 in which he named FCJ as the sole Defendant.  (Doc.

No. 1.)  In a Memorandum and Order dated March 16, 2021, the Court granted Plaintiff leave to

proceed in forma pauperis and dismissed his complaint for failure to state a claim upon which

relief may be granted pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C.

§ 1915(e)(2)(B)(ii).  (Doc. Nos. 7, 8.)  Plaintiff was granted leave to file an amended complaint

within thirty (30) days.  (Doc. No. 8.)

On April 2, 2021, Plaintiff filed an amended complaint, naming Deanna Park

("Defendant Park") as the sole Defendant.  (Doc. No. 9.)  In an Order dated April 6, 2021, the

Court directed service of the complaint on Defendant Park.  (Doc. No. 10.)  On June 4, 2021,

Defendant Park filed a motion to dismiss.  (Doc. No. 21.)  Ten (10) days later, however, Plaintiff

filed a second amended complaint against Defendants Park, Bechtold, Keller, Flannery, Gorden, and Ziobrowski. (Doc. No. 22.)  In an Order dated June 15, 2021, the Court denied Defendant Park's motion to dismiss as moot, ordered her to answer or otherwise respond to the second amended complaint within fourteen (14) days, and directed service of the second amended complaint on the other named Defendants.  (Doc. No. 24.)  The Court subsequently granted Defendant Park's motion for an extension of time to respond to the second amended complaint. (Doc. Nos. 28, 29.)

On August 13, 2021, Defendants filed their motion to dismiss (Doc. No. 53), followed by their brief in support on August 27, 2021 (Doc. No. 57), arguing, in part, that Plaintiff had failed to properly exhaust his administrative remedies in accordance with the PLRA.  The Court, observing that Defendants had raised the issue of exhaustion, issued a <u>Paladino</u> Order informing the parties that it would review exhaustion in the context of summary judgment and that, in doing so, it would consider matters outside of the pleadings in its role as factfinder.[1]  (Doc. No. 58.)  In that Order, the Court directed Defendants to file, within fourteen (14) days, a statement of material facts that complied with Local Rule 56.1.[2]  (<u>Id.</u>)

Defendants subsequently moved for and were granted an extension of time to file their statement of material facts.  (Doc. Nos. 60, 61.)  On October 7, 2021, Plaintiff filed a response to Defendants' motion to dismiss (Doc. No. 62), and on October 11, 2021, Defendants filed their motion for summary judgment and supporting materials on the issue of exhaustion.  (Doc. Nos. 63, 64, 65.)  On October 12, 2021, the Court issued a second <u>Paladino</u> Order, directing Plaintiff

---

[1]  <u>See</u> <u>Paladino v. Newsome</u>, 885 F.3d 203 (3d Cir. 2018).

[2]  Three (3) days after the Court issued that Order, Plaintiff notified the Court that he had been released from FCJ.  (Doc. No. 59 (providing his current address).)

to file a brief in opposition and responsive statement of material facts within twenty-one (21) days.  (Doc. No. 66.)  On November 4, 2021, Plaintiff filed a brief in opposition.  (Doc. No. 67.) He did not, however, file a responsive statement of material facts.  Because he did not do so, the Court deemed Defendants' facts to be undisputed.  (Doc. No. 69 at 8 n.3.)

On December 23, 2021, the Court issued a Memorandum and Order addressing Defendants' motion to dismiss and for summary judgment.  (Doc. Nos. 69, 70.)  The Court dismissed all of Plaintiff's claims with the exception of his Sixth Amendment claim against Defendant Park.  (Id.)  The Court concluded that Plaintiff had plausibly alleged that Defendant Park violated his Sixth Amendment right when she remained in the room during a telephone call that Plaintiff had with his attorney.  (Id.)  The Court also concluded that Defendant Park was not entitled to summary judgment on the basis that Plaintiff had failed to exhaust his administrative remedies with respect to this claim.  (Id.)

Following that ruling, Defendants filed a motion for reconsideration, along with a brief in support, arguing that the Court erred in finding that Defendant Park was not entitled to summary judgment on the basis of exhaustion.  (Doc. Nos. 71, 72.)  As reflected by the Court's docket, Plaintiff did not file a brief in opposition, or otherwise respond, to Defendants' motion for reconsideration.  Plaintiff instead filed two (2) motions for reconsideration.  (Doc. Nos. 76, 77.) Although Plaintiff did not file any briefs in support of those motions, Defendants filed a collective brief in opposition to his motions for reconsideration (Doc. No. 79), to which Plaintiff filed a reply.  (Doc. No. 80.)

On January 5, 2022, Defendants filed a motion to stay this matter pending the Court's resolution of their motion for reconsideration or, alternatively, to grant them an extension of time to file an answer to the second amended complaint.  (Doc. Nos. 73, 74.)  The Court partially

granted that motion and afforded Defendants an extension of time to file an answer to Plaintiff's second amended complaint.  (Doc. No. 75.)  In accordance with that Order, Defendant Park filed her answer on January 20, 2022.  (Doc. No. 78.)

Thus, the parties' pending motions for reconsideration are now ripe for the Court's disposition.  Consistent with the legal standard set forth below, the Court will deny those motions.

## II.    LEGAL STANDARD

A federal court has the "inherent authority" to reconsider its prior interlocutory orders, "at any point during which the litigation continue[s]," so long as the federal court retains jurisdiction over the case.  See In re Energy Future Holdings Corp., 904 F.3d 298, 307 (3d Cir. 2018) (citation, internal citation, and internal quotation marks omitted); State Nat'l Ins. Co. v. County of Camden, 824 F.3d 399, 406 (3d Cir. 2016) (stating that a federal district court has the "inherent power to reconsider prior interlocutory orders[,]" but that this power relies on the court retaining jurisdiction over the case) (footnote omitted)).

A party who has moved for reconsideration must establish at least one of the following grounds: "'(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [made its initial decision]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice.'"  See In re Energy Future Holdings Corp., 904 F.3d at 311 (alteration in original) (quoting United States ex rel. Schumann v. Astrazeneca Pharm. L.P., 769 F.3d 837, 848-89 (3d Cir. 2014)); Wiest v. Lynch, 710 F.3d 121, 128 (3d Cir. 2013); Max's Seafood Café v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999).

As "[t]he purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence[,]" see Harsco Corp. v. Zlotnicki, 779 F.2d 906,

909 (3d Cir. 1985), "[t]he scope of a motion for reconsideration . . . is extremely limited[,]" <u>see</u>

<u>Blystone v. Horn</u>, 664 F.3d 397, 415 (3d Cir. 2011).  Thus, "[s]uch motions are not to be used as

an opportunity to relitigate the case[.]" <u>See</u> <u>id.</u> (citing <u>Howard Hess Dental Labs., Inc. v.

Dentsply Int'l Inc.</u>, 602 F.3d 237, 251 (3d Cir. 2010)).

## III.  DISCUSSION

### A.  Defendants' Motion for Reconsideration

Defendants have filed a motion for reconsideration of the Court's December 23, 2021

Memorandum and Order, arguing that the Court erred when it found that Defendant Park was not

entitled to summary judgment on the basis that Plaintiff had failed to exhaust his administrative

remedies.  (Doc. Nos. 71, 72.)  In its December 23, 2021 Memorandum, the Court stated, in

pertinent part, as follows:

> While Plaintiff has not responded to Defendants' motion for summary judgment,
> he previously filed a document in which he asserted that administrative
> exhaustion should be waived because officials at FCJ failed to follow their own
> rules and regulations by not responding to his grievances within ten (10)
> business days. The record reflects that on July 23, 2020, Plaintiff submitted a
> grievance form in which he asserted that Defendant Park sat in on his call with
> his attorney on July 20, 2020. The grievance form clearly states that the
> Correctional Treatment Specialist, who is the individual responsible for
> responding at the first step, "[m]ust respond within 10 business days."
> Plaintiff's grievance was not responded to until August 13, 2020, sixteen (16)
> business days after he submitted the grievance. Plaintiff subsequently submitted
> a request slip about his concern (Doc. No. 64-7), and he submitted another
> grievance on August 27, 2020, which was marked as a duplicate of his July 23,
> 2020 grievance[.]
>
> The PLRA not only requires that prisoners comply with the procedural aspects
> of a grievance system. It also requires prisons to comply with the procedural
> aspects of the system they created. <u>See</u> <u>Shifflett v. Korszniak</u>, 934 F.3d 356, 365
> (3d Cir. 2019). Consequently, "[a]s soon as a prison fails to respond to a properly
> submitted grievance or appeal within the time limits prescribed by its own
> policies, it has made its administrative remedies unavailable and the prisoner has
> fully discharged the PLRA's exhaustion requirement." <u>See</u> <u>id.</u> In the instant
> case, the record clearly reflects that Plaintiff did not receive a response to his
> grievance within the specified time limit. "At that moment he obtained the right

to come into federal court." Shifflett, 934 F.3d at 366. Plaintiff's decision to subsequently submit a request slip and a second grievance concerning the same issue "did not waive or negate his successful exhaustion of remedies as required by the PLRA." See id. The Court, therefore, declines to grant Defendants summary judgment on the basis that Plaintiff failed to exhaust his administrative remedies with respect to his Sixth Amendment claim against Defendant Park.

(Doc. No. 69 at 23-24.)

In support of their contention that the Court erred when it declined to grant Defendants summary judgment on Plaintiff's Sixth Amendment claim against Defendant Park, Defendants raise two (2) separate arguments. (Doc. No. 72 at 13.) Their first argument is that the Court erred in finding that FCJ's grievance policy mandates, under Step I of the grievance process, that a response to an inmate's grievance must be issued and returned to the inmate within ten (10) business days. (Id.) In support, Defendants point to FCJ's grievance policy and inmate handbook. (Id.) The grievance policy outlines FCJ's three (3)-step grievance process and provides that, under Step I, that the staff member's response "will ordinarily be returned to the inmate within ten (10) business days." (Doc. No. 72-1 at 4 (emphasis added).) The inmate handbook, which also outlines the three (3)-step grievance process, similarly provides that, under Step I, "[a] response will generally be returned within ten (10) business days [to the inmate]." (Doc. No. 64-4 at 26) (emphasis added).)

Defendants suggest, without explicitly stating, that because FCJ's grievance policy and inmate handbook provide that a response "will generally" or "will ordinarily" be returned to the inmate within ten (10) business days, the Court erred in finding that FCJ's grievance process mandates a specific response time from staff. (Doc. No. 72 at 13-14.) Defendants also argue that the Court's reliance on Shifflet v. Korszniak, 934 F.3d 356 (3d Cir. 2019) was misplaced, as the grievance policy in that case specifically mandated a response time. (Doc. No. 72 at 14 (arguing as follows: "In Shifflet, the Third Circuit determined that the plaintiff-inmate's

6

administrative remedies were unavailable when correctional staff provided late responses to that plaintiff's grievances appeals . . . . *Shifflett* is markedly different than the present matter because the grievance policy in question specifically mandated an appeal response time . . . ").

The second argument Defendants raise is that, even if FCJ's grievance policy mandates staff to respond to an inmate's grievance within ten (10) business days, the record still reflects that staff responded to Plaintiff's grievances within that allotted timeframe.  (<u>Id.</u> at 14-15.)  In support of this argument, Defendants have expressly incorporated their prior statement of material facts (Doc. No. 64) into their brief in support of their instant motion for reconsideration. (Doc. No. 72 at 6 (citing Doc. No. 64).)  In doing so, Defendants explain that they are "supplement[ing]" and "highlight[ing]" their statement of material facts, as follows:

> On July 23, 2020, Plaintiff submitted an Inmate Grievance Form concerning the alleged incident on July 20, 2020, where Plaintiff claims Defendant Parks [sic] sat in on his privileged phone call with his attorney.
>
> This grievance was received on July 31, 2020.
>
> FCJ Treatment Specialist responded to Plaintiff's grievance on August 13, 2020.
>
> There are less than ten (10) business days between July 31, 2020 and August 13, 2020.[3]
>
> Plaintiff did not appeal this Step I response to Step II.
>
> On or around August 4, 2020, Plaintiff submitted a Request Slip, not a grievance, pertaining to another inmate's phone call with their attorney that Plaintiff claims Defendant Park sat in on . . . . This Request Slip did not pertain to any alleged privileged communications between himself and his attorney.

---

[3]  As set forth above, the Court previously determined that this grievance was not responded to until sixteen (16) business days after Plaintiff had submitted his grievance.  (Doc. No. 69 at 23-24.)  As reflected by these additional facts, Defendants begin their calculation, not when Plaintiff submits the grievance, but when the relevant staff member receives the grievance.  However, any facts related to when staff received Plaintiff's grievances were not included in the Defendants' prior motion for summary judgment via their statement of material facts.

Either way, Deputy Warden Weller responded to Plaintiff's August 4, 2020 Request Slip on August 6, 2020.

There are less than ten (10) business days between August 4, 2020, and August 6, 2020.

On August 27, 2020, Plaintiff submitted an Inmate Grievance Form concerning the response time to his July 23, 2020 grievance as well as addressing the alleged August 3, 2020 incident involving another inmate and that inmate's counsel that was described in Plaintiff's August 4, 2020 incident.

This grievance was received on August 28, 2020.

September 7, 2020 was Labor Day.

FCJ Treatment Specialist responded to Plaintiff's August 27, 2020 grievance on September 14, 2020.

There are ten (10) business days between August 28, 2020 and September 14, 2020.

Plaintiff did not appeal this Step I response to Step II.

(Doc. No. 72 at 6-8 (citations, internal citations, and emphasis omitted).)

Based on these facts, Defendants argue that the Court erred in determining that Plaintiff's administrative remedies were unavailable to him as it pertains to the grievances he filed at FCJ concerning his Sixth Amendment claim against Defendant Park.  (Id. at 15 (stating that it is "undeniable that Plaintiff never appealed his Step I grievance response to his July 23, 2020 grievance or his August 27, 2020 grievance" (emphasis omitted)).)  Thus, Defendants urge the Court to reconsider its prior ruling and find that Plaintiff's Sixth Amendment claim against Defendant Park "is premature" due to his failure to exhaust.  (Id.)

As set forth above, a judgment may be altered or amended if the party seeking reconsideration shows at least one of the following grounds: (1) an intervening change in controlling law; (2) the availability of new evidence that was not available when the court made

its initial decision; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice.  See In re Energy Future Holdings Corp., 904 F.3d at 311.  In the instant motion for reconsideration, Defendants seek to correct an error of fact.  (Doc. No. 72 at 15.)  While reconsideration may be sought on this ground, the Court finds that Defendants are attempting to reargue their prior motion for summary judgment by using additional facts and evidence that were available to them at the time, but not submitted into the summary judgment record for the Court's consideration.

More specifically, Defendants have relied on facts in their brief in support of their motion for reconsideration, which were not included in their statement of material facts filed in support of their prior motion for summary judgment.  See, e.g., (Doc. No. 72 at 6-8 (including specific dates of when Plaintiff's grievances were received by individuals at FCJ and specific dates of when those individuals provided responses to Plaintiff's grievances, as well as calculations as to the number of business days in between those dates, including the omission of a holiday)). Defendants have also relied on FCJ's grievance policy, which was not included as an exhibit in support of their prior motion for summary judgment.  (Doc. Nos. 64-1 through 64-11.) Defendants do not argue, however, that this evidence was unavailable at the time they filed their motion for summary judgment, nor does the Court see how they could make such an argument. See Howard Hess Dental Lab'ys Inc., 602 F.3d at 252 (stating that "'new evidence,' for reconsideration purposes, does not refer to evidence that a party obtains or submits to the court after an adverse ruling.  Rather, new evidence in this context means evidence that a party could not earlier submit to the court because that evidence was not previously available.").

Thus, for all of these reasons, the Court ultimately concludes that Defendants are seeking to reargue issues that they previously raised, but in a more robust fashion.  Because of this, they

have not set forth an appropriate basis for reconsideration of the Court's December 23, 2021 Memorandum and Order.  Accordingly, their motion for reconsideration will be denied.  See, e.g., United States v. Kalb, 891 F.3d 455, 467 (3d Cir. 2018) (stating that "[i]n denying the motion for reconsideration, the District Court determined the government's arguments could as well have been made earlier and were accordingly not a proper basis for reconsideration. We agree and find no abuse of discretion in the District Court's denial of the motion" (internal citation and internal quotation marks omitted)); Blystone, 664 F.3d at 415 (explaining that a motion for reconsideration is "not to be used as an opportunity to relitigate the case . . . ").

    That being said, the Court recognizes the PLRA's exhaustion requirement, which provides that "'[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.'"  See Paladino, 885 F.3d at 207 (quoting 42 U.S.C. § 1997e(a)) (alterations in original).  In other words, exhaustion of available administrative remedies is a prerequisite for Plaintiff bringing this suit under § 1983.[4]  See Ross v. Blake, 578 U.S. 632, 638 (2016) (explaining that the PLRA's "language is 'mandatory': An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies") (quoting Woodford v. Ngo, 548 U.S. 81, 85 (2006))); Jones v. Bock, 549 U.S. 199, 211 (2007) (stating that "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court" (citation omitted)); Porter v. Nussle, 534 U.S. 516, 524 (2002) (stating that "[o]nce within the discretion of the district court, exhaustion in cases covered by § 1997e(a) is now mandatory

---

[4]  As set forth in the Background section of this Memorandum, Plaintiff is proceeding on a second amended complaint.  (Doc. No. 22.)  At the time Plaintiff filed his second amended complaint, he was still incarcerated at FCJ.  (Id. at 9.)

. . . [a]ll available remedies must now be exhausted . . . " (citation, internal citation, and internal quotation marks omitted) (alterations added)); Downey v. Pennsylvania Dep't of Corr., 968 F.3d 299, 305 (3d Cir. 2020) (stating that the "stringent requirements" of the PLRA are designed to, among other things, "return[ ] control of the inmate grievance process to prison administrators, encourage[ ] the development of an administrative record, and perhaps settlements, within the inmate grievance process, and reduc[e] the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits" (citation and internal quotation marks omitted) (alterations added)).

Thus, because exhaustion is a prerequisite for Plaintiff bringing this suit under § 1983, and because Defendants have now presented an expanded factual and evidentiary record in support of their argument that Plaintiff failed to exhaust his administrative remedies, the Court will allow Defendants to file a renewed motion for summary judgment on the limited issue of whether Plaintiff exhausted his available administrative remedies at FCJ with respect to his Sixth Amendment claim against Defendant Park—i.e., that she remained in the room while Plaintiff was on the telephone with his attorney.  Plaintiff will, of course, be permitted to file a response in accordance with the Local Rules of Court and the Federal Rules of Civil Procedure.  See, e.g., Ingram v. S.C.I. Camp Hill, 448 F. App'x 275, 278 (3d Cir. 2011) (holding that the district court judge did not abuse his discretion in "allowing the defendants to submit a renewed motion for summary judgment on their exhaustion defense . . . "); Krueger Assocs., Inc. v. American Dist. Telegraph Co. of Pa., 247 F.3d 61, 65-66 (3d Cir. 2001) (concluding that the district court's denial of the initial pre-discovery summary judgment motion "did not create any bar to the court's later reconsideration of the renewed" post-discovery summary judgment motion).[5]

---

[5]  It is not lost on the Court that a plaintiff's failure to exhaust administrative remedies "is an affirmative defense that the defendant must plead and prove[.]"  See Downey, 968 F.3d at 305 (citing Jones, 549 U.S. at 216).  The Court notes that it is not dispensing with Defendants'

## B.      Plaintiff's Motions for Reconsideration

Plaintiff has also sought reconsideration of the Court's December 23, 2021 Memorandum and Order by filing two (2) motions for reconsideration (Doc. Nos. 76, 77).  Because Plaintiff has not filed a brief in support of either one of those motions, the Court would be authorized to deem his motions withdrawn.   See M.D. Pa. L.R. 7.5.  Given, however, that Defendants filed a brief in opposition to address both of Plaintiff's motions for reconsideration, and considering that Plaintiff has since filed a reply brief to that brief in opposition, the Court will address the merits of Plaintiff's motions.

As stated above, a party seeking reconsideration of the Court's order must establish an intervening change in controlling law, the availability of new evidence that was not previously available, or the need to correct clear error of law or fact or to prevent manifest injustice.  See In re Energy Future Holdings Corp., 904 F.3d at 311.  Here, Plaintiff has neither cited to an intervening change in controlling law nor the availability of new evidence.  Rather, he appears to argue that the Court's decision resulted in errors of fact and law with respect to his supervisory liability claims (Doc. Nos. 76 at 1-3) and his First, Fourth, and Fourteenth Amendment claims. (Doc. No. 77 at 1-3).

### 1.      Supervisory Liability Claims

In its December 23, 2021 Memorandum, the Court explained that there are two theories of supervisory liability: (1) "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations[;]" and (2)

---

burden to plead and prove this affirmative defense.  Defendants will indeed carry this burden with respect to their forthcoming motion for summary judgment.

policymakers may also be liable under § 1983 "if it is shown that such defendants, with deliberate indifference to the consequences, established and maintained a policy, practice[,] or custom which directly caused [the] constitutional harm." (Doc. No. 69 at 18-19 (quoting A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004)).) The Court further explained that, with respect to the second theory of liability, the plaintiff must allege that: "(1) the existing policy or practice created an unreasonable risk of [constitutional] injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice." (Id. at 19 (quoting Beers-Capitol v. Whetzel, 256 F.3d 120, 134 (3d Cir. 2001) (citing Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989)).) And, finally, the Court explained that, "[a]t a minimum, supervisory liability can be imposed 'only where there are both (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances under which the supervisor's inaction could be found to have communicated a message of approval to the offending subordinate.'" (Id. (quoting Chincello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986)).)

Ultimately, the Court found that "[t]he second amended complaint [was] devoid of allegations that these Defendants [(i.e., Defendants Bechtold, Keller, Flannery, and Ziobrowski)] had knowledge of and acquiesced in any alleged constitutional violations by their subordinates." (Id. (citing A.M., 372 F.3d at 586).) Plaintiff argues that this finding was error. (Doc. No. 76 at 1-3.) Plaintiff believes that he has shown the requisite knowledge on the part of Defendant Bechtold and that there was a common practice and/or custom at FCJ to sit in on the inmates' calls when they are speaking to their counsel. (Id. (arguing that it was "reasonable" that

Defendant Bechtold would have known because of the grievances and request slip that Plaintiff submitted).)

Plaintiff, however, has not pointed to a single allegation in the second amended complaint, which would raise the inference that Defendants Bechtold, Keller, Flannery, or Ziobrowski had knowledge of and acquiesced in any constitutional violations that had allegedly been committed by their subordinates.  Thus, the Court finds that Plaintiff is entreating the Court to reconsider the same allegations that it previously considered in the second amended complaint, but to now reach a different conclusion.  The Court declines to do so.  See Blystone, 664 F.3d at 415 (stating that motions for reconsideration "are not to be used as an opportunity to relitigate the case").  The Court will, therefore, deny Plaintiff's motion for reconsideration with respect to his supervisory liability claims.

### 2.    First Amendment Access to the Courts Claim

In its December 23, 2021 Memorandum, the Court recognized that "prisoners maintain a 'fundamental constitutional right of access to the courts.'" (Doc. No. 69 at 14 (quoting Lewis v. Casey, 518 U.S. 343, 346 (1996).)   The Court also recognized that, "a pretrial detainee, such as Plaintiff was when he initiated [this action], has a right to access the courts with respect to receiving legal assistance and participating in preparing a defense against pending criminal charges."  (Id.  (citing Prater v. City of Phila., 542 F. App'x 135, 136-37 (3d Cir. 2013).)  The Court also pointed out, however, that in order for Plaintiff to set forth an access to the courts claim, he "must allege 'actual injury, such as the loss or rejection of a legal claim.'"  (Id. (citing Oliver v. Fauver, 118 F.3d 175, 177 (3d Cir. 1997).)

Ultimately, the Court found that Plaintiff's second amended complaint did not contain any allegations that he suffered an actual injury from Defendants' alleged actions and, thus, the

14

Court granted Defendants' motion to dismiss Plaintiff's First Amendment access to the courts claim. (Doc. No. 69 at 15.)  Plaintiff argues that the Court erred when it made this ruling.  In support, he appears to raise two (2) separate arguments: (1) that "the restrictions of the PLRA" do not apply to his First Amendment claims; and (2) that regardless of "the form of relief" he seeks, he is still entitled to "judicial relief" under the First Amendment.  (Doc. No. 77 at 3.)   The Court, having reviewed these arguments, finds that neither one is persuasive.

The Court did not grant Defendants' motion to dismiss, with respect to Plaintiff's First Amendment access to the courts claim, on the basis of any "restrictions" set forth in the PLRA or on the basis of any "relief" Plaintiff sought in the second amended complaint.  Rather, the Court granted Defendants' motion pursuant to the legal standard governing such motions to dismiss— Rule 12(b)(6) of the Federal Rules of Civil Procedure.  (Doc. 69 at 4-5, 14-15.)  Under that standard, the Court found that Plaintiff did not allege any facts in the second amended complaint which would show that he suffered an actual injury as a result of Defendants' conduct.  (Id. at 15.)  The Court discerns no error in this finding.  As a result, the Court will deny Plaintiff's motion for reconsideration of his First Amendment access to the courts claim.

### 3.  Fourth Amendment Claim

With respect to his purported Fourth Amendment claim, Plaintiff argues that he has plausibly alleged a search and seizure claim against Defendant Park on the basis that she remained in the room during a telephone call that he had with his attorney.  (Doc. No. 77 at 2-3.)  In its December 23, 2021 Memorandum, the Court explicitly recognized Plaintiff's allegations regarding this incident and, in particular, Plaintiff's allegation that this incident resulted in "'a clear violation of client-lawyer relationship confidentiality laws.'" (Doc. No. 69 at 3 (quoting

Doc. No. 22 at 5).)   As a result, the Court construed Plaintiff's allegations as plausibly stating a
violation of his Sixth Amendment right to counsel.  (Id. at 15-17.)

    The Court finds no error in this ruling since Plaintiff's second amended complaint has
properly been construed as asserting a violation of his Sixth Amendment right to counsel, and
not an unlawful search and seizure under the Fourth Amendment.  (Doc. No. 22 at 5 (alleging, in
essence, that Defendant Park had interfered with his ability to have free and open communication
with his attorney because Defendant Park remained in the room while he was on the phone with
his attorney)); see also United States v. Levy, 577 F.2d 200, 209 (3d Cir. 1978) (stating that "the
interests at stake in the attorney-client relationship are unlike the expectations of privacy that
underlie the fourth amendment exclusionary rule. The fundamental justification for the [S]ixth
[A]mendment right to counsel is the presumed inability of a defendant to make informed choices
about the preparation and conduct of his defense. Free two-way communication between client
and attorney is essential if the professional assistance guaranteed by the [S]ixth [A]mendment is
to be meaningful").  Thus, the Court will deny his motion for reconsideration of his purported
Fourth Amendment search and seizure claim.

### 4.    Fourteenth Amendment Claim

    With respect to Plaintiff's Fourteenth Amendment claim, the Court finds that he has only
mentioned this claim in passing.  (Doc. No. 77 at 1.)  Plaintiff has not set forth any meaningful
basis upon which the Court would be compelled to reconsider its prior decision.  Thus, the Court
will deny his motion for reconsideration of his Fourteenth Amendment claim.

## IV.   CONCLUSION

    For all of the foregoing reasons, the Court will deny the parties' motions for
reconsideration.  An appropriate Order follows.

16