IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**THOMAS DAVID STRODE,** :
    **Plaintiff** : No. 1:21-cv-00291
   :
    v. : (Judge Kane)
   :
**DEANNA PARK, et al.,** :
    **Defendants** :

## MEMORANDUM

Presently before the Court are the parties' cross-motions for summary judgment, which have been filed pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Doc. Nos. 88, 89.) For the reasons set forth below, the Court will deny Plaintiff Thomas David Strode ("Plaintiff")'s motion, and the Court will grant Defendant Deanna Park ("Defendant Park")'s motion on the basis that Plaintiff failed to exhaust his available administrative remedies before filing this lawsuit. Judgment will, therefore, be entered in favor of Defendant Park and against Plaintiff.

**I.  BACKGROUND**

On February 17, 2021, Plaintiff, who was then incarcerated at the Franklin County Jail ("FCJ") in Chambersburg, Pennsylvania, commenced the above-captioned action by filing a complaint pursuant to 42 U.S.C. § 1983 ("Section 1983") in which he named FCJ as the sole Defendant. (Doc. No. 1.) In a Memorandum and Order dated March 16, 2021, the Court granted Plaintiff leave to proceed in forma pauperis and dismissed his complaint for failure to state a claim upon which relief may be granted pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915(e)(2)(B)(ii). (Doc. Nos. 7, 8.) Plaintiff was granted leave to file an amended complaint within thirty (30) days. (Doc. No. 8.)

On April 2, 2021, Plaintiff filed an amended complaint, naming Defendant Park as the sole Defendant. (Doc. No. 9.) In an Order dated April 6, 2021, the Court directed service of the

amended complaint on Defendant Park. (Doc. No. 10.) On June 4, 2021, Defendant Park filed a motion to dismiss. (Doc. No. 21.) Ten (10) days later, however, Plaintiff filed a second amended complaint against Defendants Park, William Bechtold, David Keller, John Flannery, Robert Ziobrowksi, and Jack Gorden. (Doc. No. 22.) In an Order dated June 15, 2021, the Court denied Defendant Park's motion to dismiss as moot, ordered her to answer or otherwise respond to the second amended complaint within fourteen (14) days, and directed service of the second amended complaint on the other named Defendants. (Doc. No. 24.) The Court subsequently granted Defendant Park's motion for an extension of time to respond to the second amended complaint. (Doc. Nos. 28, 29.)

On August 13, 2021, Defendants filed their motion to dismiss (Doc. No. 53), followed by a brief in support on August 27, 2021 (Doc. No. 57), arguing, in part, that Plaintiff had failed to properly exhaust his administrative remedies in accordance with the PLRA. The Court, observing that Defendants had raised the issue of exhaustion, issued a Paladino Order informing the parties that it would review exhaustion in the context of summary judgment and that, in doing so, it would consider evidence outside of the pleadings in its role as factfinder.[1] (Doc. No. 58.) In that Order, the Court directed Defendants to file, within fourteen (14) days, a statement of material facts that complied with Local Rule 56.1.[2] (Id.)

Defendants subsequently moved for and were granted an extension of time to file their statement of material facts. (Doc. Nos. 60, 61.) On October 7, 2021, Plaintiff filed a response to Defendants' motion to dismiss (Doc. No. 62), and on October 11, 2021, Defendants filed their

---

[1] See Paladino v. Newsome, 885 F.3d 203 (3d Cir. 2018).

[2] Three (3) days after the Court issued that Order, Plaintiff notified the Court that he had been released from FCJ. (Doc. No. 59.)

motion for summary judgment and supporting materials on the issue of exhaustion. (Doc. Nos. 63, 64, 65.) On October 12, 2021, the Court issued a second Paladino Order, directing Plaintiff to file a brief in opposition and responsive statement of material facts within twenty-one (21) days. (Doc. No. 66.) On November 4, 2021, Plaintiff filed a brief in opposition. (Doc. No. 67.) He did not, however, file a responsive statement of material facts. Because he did not do so, the Court deemed Defendants' facts to be undisputed. (Doc. No. 69 at 8 n.3.)

On December 23, 2021, the Court issued a Memorandum and Order addressing Defendants' motion to dismiss and for summary judgment. (Doc. Nos. 69, 70.) The Court dismissed all claims against all Defendants, with the exception of Plaintiff's Sixth Amendment claim against Defendant Park. (Id.) The Court concluded that Plaintiff had plausibly alleged that Defendant Park violated his Sixth Amendment right when she remained in the room during a telephone call that Plaintiff had with his attorney. (Id.) The Court also concluded that Defendant Park was not entitled to summary judgment on the basis that Plaintiff had failed to exhaust his administrative remedies with respect to this claim. (Id.)

Following that ruling, Defendant Park filed a motion for reconsideration, along with a brief in support, arguing that the Court erred in finding that Defendant Park was not entitled to summary judgment on the basis of exhaustion. (Doc. Nos. 71, 72.) As reflected by the Court's docket, Plaintiff did not file a brief in opposition, or otherwise respond, to Defendant Park's motion for reconsideration. Plaintiff instead filed two (2) of his own motions for reconsideration. (Doc. Nos. 76, 77.) Although Plaintiff did not file any briefs in support of those motions, Defendant Park filed a collective brief in opposition to his motions for reconsideration (Doc. No. 79), to which Plaintiff filed a reply. (Doc. No. 80.)

3

On January 5, 2022, Defendant Park filed a motion to stay this matter pending the Court's resolution of her motion for reconsideration or, alternatively, to grant her an extension of time to file an answer to the second amended complaint. (Doc. Nos. 73, 74.) The Court partially granted that motion and afforded Defendant Park an extension of time to file an answer to Plaintiff's second amended complaint. (Doc. No. 75.) In accordance with that Order, Defendant Park filed her answer on January 20, 2022. (Doc. No. 78.)

On May 31, 2022, the Court issued a Memorandum and Order denying the parties' motions for reconsideration. (Doc. Nos. 86, 87.) With respect to Defendant Park's motion for reconsideration, the Court found that she was, essentially, attempting to reargue her prior motion for summary judgment by using additional facts and evidence that were available to her at the time, but not submitted into the summary judgment record for the Court's consideration. (Doc. No. 86 at 9.) As such, the Court concluded that Defendant Park had failed to set forth an appropriate basis for reconsideration of the Court's December 23, 2021 Memorandum and Order. (Id. at 9-10.) However, recognizing that exhaustion of administrative remedies is a prerequisite for Plaintiff's assertion of a Section 1983 claim, and acknowledging that Defendant Park had presented an expanded factual and evidentiary record in support of her argument that Plaintiff failed to exhaust his administrative remedies, the Court allowed Defendant Park to file a renewed motion for summary judgment on the limited issue of whether Plaintiff exhausted his available administrative remedies at FCJ with respect to his Sixth Amendment claim against Defendant Park—i.e., that she remained in the room while Plaintiff was on the telephone with his attorney. (Id. at 10-11.)

On June 21, 2022, Defendant Park filed a renewed motion for summary judgment on the limited issue of administrative exhaustion (Doc. No. 89), along with a statement of material facts

4

and brief in support thereof (Doc. Nos. 90, 91). Plaintiff filed a brief in opposition on July 25, 2022. (Doc. No. 95.) Plaintiff has also filed his own motion for summary judgment. (Doc. No. 88.) He did not, however, file a statement of material facts or brief in support of that motion, as required by the Local Rules of this Court, and the time period for doing so has since passed.[3]

Thus, the parties' cross-motions for summary judgment are ripe for the Court's disposition. For the reasons that follow, the Court will grant Defendant Park's motion and deem Plaintiff's motion withdrawn pursuant to the Local Rules of this Court. Accordingly, the Court will direct the Clerk of Court to enter judgment in favor of Defendant Park and against Plaintiff and to close this case.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) requires the Court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

---

[3] Under the Court's Local Rules, a motion for summary judgment "shall be accompanied by a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." See M.D. Pa. L.R. 56.1. In addition, "[t]he papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts, responding to the numbered paragraphs set forth in [the moving party's statement], as to which [the non-moving party] contend[s] that there exists a genuine issue to be tried." See id. All material facts set forth in the moving party's statement "will be deemed to be admitted unless controverted by [the non-moving party's statement]." See id.

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. See id. at 248; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson, 477 U.S. at 257; Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am., 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the Court must view the facts and all reasonable inferences in favor of the nonmoving party. See Moore v. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement v. Consol. Rail Corp., 963 F.2d 599, 600 (3d Cir. 1992); White v. Westinghouse Elec. Co., 862 F.2d 56, 59 (3d Cir. 1988). In order to avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. When the party seeking summary judgment satisfies its burden under Rule 56 of identifying evidence that demonstrates the absence of a genuine issue of material fact, the nonmoving party is required to go beyond his pleadings with affidavits, depositions, answers to interrogatories, or the like in order to demonstrate specific material facts that give rise to a genuine dispute. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." See Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986). When Rule 56 shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case that it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." See Celotex, 477 U.S. at 323; see also Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992).

As noted supra, when determining whether a dispute of material fact exists, the Court must consider the evidence in the light most favorable to the nonmoving party. See White, 862 F.2d at 59. In doing so, the Court must accept the nonmovant's allegations as true and resolve any conflicts in his favor. See id. (citations omitted). However, a party opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." See L.R. 56.1. A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a pro se litigant. These rules apply with equal force to all parties. See Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 245 (3d Cir. 2013) (noting that pro se parties "cannot flout procedural rules—they must abide by the same rules that apply to all other litigants").

## III.   DISCUSSION

### A.   Plaintiff's Motion for Summary Judgment

Plaintiff filed his motion for summary judgment on June 15, 2022. (Doc. No. 88.) However, Plaintiff did not file a brief in support of his motion, as required by the Local Rules of this Court. More specifically, Local Rule 7.5 provides as follows:

> Within fourteen (14) days after the filing of any motion, the party filing the motion shall file a brief in support of the motion. If the motion seeks a protective order, a supporting brief shall be filed with the motion. If a supporting brief is not filed within the time provided in this rule the motion shall be deemed to be withdrawn. A brief shall not be required: (a) In support of a motion for enlargement of time if the reasons for the request are fully stated in the motion, (b) In support of any motion which has concurrence of all parties, and the reasons for the motion and the relief sought are fully stated therein, or (c) In support of a motion for appointment of counsel.

See M.D. Pa. L.R. 7.5; see also M.D. Pa. L.R. 7.4 (explaining, among other things, that Local Rule 7.5 applies to motions for summary judgment).

Thus, because Plaintiff did not file a brief in support of his motion for summary judgment, the Court will deem his motion withdrawn. And, although the Court will deem the motion withdrawn, the Court finds, for the reasons set forth below, that Plaintiff's claims are also procedurally defaulted for failure to exhaust available administrative remedies at FCJ. Therefore, even if Plaintiff had filed a brief in support and a statement of material facts, the Court would still reach the same conclusion and deny his motion.[4]

### B. Defendant Park's Motion for Summary Judgment

Defendant Park argues that she is entitled to summary judgment because Plaintiff failed to exhaust available administrative remedies in accordance with the PLRA. (Doc. Nos. 89, 90, 91.) Under the PLRA's exhaustion requirement, "[n]o action shall be brought with respect to prison conditions under [S]ection 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." See 42 U.S.C. § 1997e(a). In other words, exhaustion of available administrative remedies is a prerequisite for Plaintiff's assertion of a Section 1983 claim regarding his prison conditions at FCJ. See Ross v. Blake, 578 U.S. 632, 638 (2016) (reiterating

---

[4] Additionally, the Court notes that Local Rule 56.1 further provides as follows:

> A motion for summary judgment filed pursuant to Fed.R.Civ.P.56, shall be accompanied by a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried.

See M.D. Pa. L.R. 56.1. Plaintiff also failed to file a statement of material facts in support of his motion for summary judgment.

8

that the PLRA's "language is 'mandatory': An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies" (quoting Woodford v. Ngo, 548 U.S. 81, 85 (2006))); Jones v. Bock, 549 U.S. 199, 211 (2007) (stating that "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court" (citation omitted) (alteration added)); Booth v. Churner, 532 U.S. 731, 733-34 (2001) (stating that the PLRA "now requires a prisoner to exhaust 'such administrative remedies as are available' before suing over prison conditions" (quoting 42 U.S.C. § 1997e(a))).[5]

Thus, in light of Defendant Park's argument and these governing principles, the Court must determine whether Plaintiff exhausted available administrative remedies at FCJ before commencing suit in this Court. In this regard, Defendant Park acknowledges that Plaintiff did, in fact, file some administrative review documents at FCJ concerning his Sixth Amendment claim, but she argues that Plaintiff did not complete proper exhaustion of that claim. (Doc. Nos. 89-91.)

Under the PLRA, proper exhaustion "mean[s] 'complet[ing] the administrative review process in accordance with the applicable procedural rules.'" See Downey v. Pennsylvania Dep't of Corr., 968 F.3d 299, 305 (3d Cir. 2020) (quoting Woodford, 548 U.S. at 88). And the applicable "procedural rules are supplied by the individual prisons." See id. (citations omitted); Spruill v. Gillis, 372 F.3d 218, 222 (3d Cir. 2004) (stating that "the determination [of] whether a prisoner has 'properly' exhausted a claim . . . is made by evaluating the prisoner's compliance with the prison's administrative regulations governing inmate grievances . . ."). A prisoner's failure to follow such procedural rules will result in a procedural default of the claims, thus

---

[5] As noted above, Plaintiff was released from FCJ after he had filed his second amended complaint. (Doc. No. 59.)

barring the prisoner from bringing suit in federal court. See id. at 227-32; Scott v. CO Smoke, No. 19-cv-01387, 2019 WL 7163465, at *2 (M.D. Pa. Dec. 20, 2019) (stating that prisoners "who fail to fully, or timely, complete the prison grievance process, or who fail to identify the named defendants, are barred from subsequently litigating claims in federal court" (citing Spruill, 372 F.3d 218)).

With respect to the procedural rules that apply here, the Court observes that FCJ has a multi-tier administrative review process in place to address the concerns and issues encountered by the inmates while they are confined there. (Doc. No. 90-4.) Defendant Park specifically addresses this administrative review process in her statement of material facts. (Doc. No. 90 ¶¶ 4-16.) As stated above, however, Plaintiff did not file his own statement of material facts, responding to the numbered paragraphs set forth in Defendant Park's statement, including the numbered paragraphs related to the multi-tier administrative review process at FCJ. Thus, under the Local Rules of this Court, see M.D. Pa. L.R. 56.1, Defendant Park's facts are deemed admitted since:

> A failure to file a counter-statement equates to an admission of all the facts set forth in the movant's statement. This Local Rule serves several purposes. First, it is designed to aid the Court in its determination of whether any genuine issue of material fact is in dispute. Second, it affixes the burden imposed by Federal Rule of Civil Procedure 56(e), as recognized in Celotex Corp. v. Catrett, on the nonmoving party 'to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designated specific facts showing that there is a genuine issue for trial.' 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (internal quotations omitted) (emphasis added).

See Williams v. Gavins, No. 1:13-cv-00387, 2015 WL 65080, at *5 (M.D. Pa. Jan. 5, 2015), aff'd sub nom. Williams v. Gavin, 640 F. App'x 152 (3d Cir. 2016) (emphasis in original) (citation omitted).

        **1.**      **Material Facts**

In Defendant Park's statement of material facts, she sets forth the following factual allegations. The FCJ grievance policy in place during the period of time relevant to Plaintiff's second amended complaint provides that an inmate may submit a grievance by completing FCJ Form 300.05-1-Inmate Grievance Form. (Doc. No. 90 ¶ 4.) The inmate will then place the form in the appropriate box on the unit. (Id.) If the inmate is on Administrative Segregation Status, staff will place it in the appropriate box for the inmate. (Id.) In preparing a grievance, the inmate's issue should be stated clearly and include such information as dates, time, names, places, references to the inmate handbook, and other data which will help to fully explain the problem. (Id. ¶ 5.) Additionally, the inmate should explain on the form exactly what relief or remedy he/she expects to receive. (Id. ¶ 6.) Finally, when submitting a grievance, an inmate should place the grievance form in the unit mailbox for proper delivery. (Id. ¶ 7.) Hand-delivered forms from staff or inmates will not be accepted. (Id.)

All grievances will be forwarded to the appropriate treatment staff for review. (Id. ¶ 8.) Thereafter, the staff member will initial and place the time and date on the form. (Id. ¶ 9.) In responding to the initial grievance, the staff member shall attempt to resolve the grievance. (Id. ¶ 10.) The staff member's solution/response will be noted on the form, and the form will ordinarily be returned to the inmate within ten (10) business days. (Id.) A staff member's solution/response, however, is not required to be returned to the inmate within ten (10) business days, and instead, this language in the policy acts as an aspirational goal that staff should strive to meet if possible. (Id. ¶ 11.)

After an inmate receives the initial response to his grievance, and if the inmate is not satisfied with the decision that has been made, the inmate will be responsible for appealing the

decision using the grievance form. (Id. ¶ 12.) An inmate has five (5) business days to appeal the initial response. (Id. ¶ 13.) The initial appeal will be sent to the Deputy Wardens or their designee. (Id. ¶ 14.) They will ordinarily respond within ten (10) business days. (Id. ¶ 14.) If the inmate is dissatisfied with the response to the first appeal, they will have five (5) business days to appeal the secondary response. (Id. ¶ 15.) This appeal will then be referred to the Warden or his or her designee. (Id. ¶ 16.) At this step, a grievance may be denied, granted, or deferred for a formal hearing. (Id.) All decisions at this stage are final. (Id.)

In connection with this administrative review process at FCJ, Defendant Park argues that Plaintiff did not properly exhaust his grievances regarding his Sixth Amendment claim. In support, Defendant Park sets forth the following facts concerning Plaintiff's grievance history at FCJ. More specifically, she states that, on July 23, 2020, Plaintiff submitted an inmate grievance form concerning the July 20, 2020 incident with Defendant Park. (Id. ¶ 17.) This grievance provides as follows:

> On July 20th 2020 between 3:00 p.m. and 4:00 p.m. an associate (Ms[.] Park) of the [FCJ] sat in on a call with my attorney and did not leave the room. This is a clear and deliberate violation of my client-lawyer confidentiality laws. There is not supposed to be anyone present or listening while I am talking with my lawyer. For all I know she was recording my conversation or relaying the information back to the D.A. which would be a grievous disregard for the laws and conduct of the jail and their employees. On top of being illegal it would be completely immoral of your employees to engage in those kinds of behaviors. I would also like a copy of this grievance.

(Id.) FCJ staff received this grievance on July 31, 2020, as noted by the initialed date in the top left-hand corner of the grievance form pursuant to Section 6.2 of FCJ's grievance policy. (Id. ¶ 18.)

Thereafter, FCJ Treatment Specialist Jessica Sterner ("Sterner") responded to the grievance on August 13, 2020 (id. ¶ 19), stating as follows: "If you have a concern about

12

confidentiality, you should bring [it] to the attention of your attorney and jail staff to determine whether your concern is legitimate" (id. ¶ 20.)  Sterner's response was issued within ten (10) business days, as there are less than ten (10) business days between July 31, 2020, and August 13, 2020.  (Id. ¶ 21.)  Plaintiff never appealed Sterner's initial response to his July 23, 2020 grievance, and there is no appeal noted on the grievance form.  (Id. ¶ 22.)  In this regard, Michelle Weller, the Deputy Warden of Inmate Services at FCJ, reviewed Plaintiff's inmate file and FCJ's grievance files and located no documentation to suggest that Plaintiff appealed this initial response.  (Id. ¶ 23.)

Additionally, on August 27, 2020, Plaintiff submitted a grievance regarding the response to his July 23, 2020 grievance, as well as an alleged incident that occurred on August 3, 2020.  (Id. ¶ 24.)  This grievance states as follows:

> I put in a grievance on July 23rd of 2020 grievance number 20-00497 and did not get it back till [sic] after the 10 days on Aug. 26th of 2020[.] It was on a [sic] associate of the Franklin County Jail (Ms[.] Park) sitting in on lawyer calls[.] As the 10 days are well past I thought it best to start this appeal on a new grievance in hopes you follow your own policy and inmate rights and get back to me within the 10 days. You put if I have concern [sic] about confidentiality I should bring [it] to the attention of my attorney and jail staff to determine weather [sic] my concern is legitimate [sic] (Loutzenhiser v. Doddo 260 A.2d 745 attorney- client isn't privileged if it takes place in front of a 3rd party). I also have no idea what jail staff I should talk to on this matter[.] I have put in request on if they have training or not but the request [sic] are sent back with no response on them[.] I also put in a request slip of it happening with the same Franklin County associate (Ms[.] Park) on 8/3/20 well after my grievance was submitted but it was blown off:1.] I wonder just how many inmates have had there [sic] rights violated in this manner. Thank you for your time.

(Id.)  This grievance was received by FCJ staff on August 28, 2020, as noted by the initialed date in the top left-hand corner of the grievance form pursuant to Section 6.2 of the FCJ grievance policy.  (Id. ¶ 25.)  Thereafter, FCJ Treatment Specialist Sterner responded to the grievance on September 14, 2020.  (Id. ¶ 26.)  Sterner's initial response stated, "Duplicate – see response to

13

20-00497." (Id. ¶ 27.) Sterner's response to this grievance was issued within ten (10) business days, as there are ten (10) business days between August 28, 020, and September 14, 2020, and because FCJ observed September 7, 2020, as a holiday and not as a business day. (Id. ¶ 28.) Plaintiff never appealed Sterner's initial response to his August 27, 2020 grievance, and there is no appeal noted on the grievance form. (Id. ¶ 29.) Additionally, Deputy Warden Weller reviewed Plaintiff's inmate file and FCJ's grievance files and located no documentation to suggest that Strode appealed this initial response. (Id. ¶ 30.)

### 2. Procedural Default

In accordance with this undisputed record, Defendant Park argues that Plaintiff only submitted two (2) grievances concerning his Sixth Amendment claim. (Doc. No. 91 at 8-9.) Defendant Park further argues that Plaintiff never appealed either one of Sterner's initial responses to those grievances. (Id.) As a result, Defendant Park contends that Plaintiff failed to properly exhaust his administrative remedies at FCJ before he filed this Section 1983 action. (Id. at 10.) The Court, having carefully reviewed this matter, agrees.

More specifically, the Court finds that Plaintiff has procedurally defaulted his Sixth Amendment claim against Defendant Park because he failed to comply with the rules of the administrative review process that were in place at FCJ during the relevant period of time. This procedural default may be excused, however, if Plaintiff can show that the administrative remedies at FCJ were unavailable to him. See Rinaldi v. United States, 904 F.3d 257, 266 (3d Cir. 2018) (stating that "[t]he PLRA requires only 'proper exhaustion,' meaning exhaustion of those administrative remedies that are 'available'" (quoting Woodford, 548 U.S. at 93)). "An administrative remedy is unavailable when it 'operates as a simple dead end[,] . . . is so opaque that it becomes, practically speaking, incapable of use, or when prison administrators thwart

inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" Downey, 968 F.3d at 305 (quoting Shifflett v. Korszniak, 934 F.3d 356, 365 (3d Cir. 2019)).

In considering whether procedural default should be excused, the Court is mindful of the basic principle that, "once the defendant has established that the inmate failed to resort to administrative remedies, the onus falls on the inmate to show that such remedies were unavailable to him." See Rinaldi, 904 F.3d at 268 (citation and internal citation omitted). In other words, Plaintiff is the one who shoulders the burden of establishing that administrative remedies were unavailable to him at FCJ.

In his briefing, Plaintiff asserts several grounds upon which he appears to argue that his procedural default should be excused. For the sake of clarity, the Court addresses each of these grounds in turn.

        a.     **Plaintiff's Purported Appeal**

Initially, Plaintiff argues that "[o]n grievance number 20-00557[,]" which is the grievance he filed on August 27, 2020, "you can see where [he] tried to have the proper process followed[.]" (Doc. No. 95 at 3.) In support, Plaintiff has attached that grievance to his briefing and highlighted what he deems to be the important portions. (Id. at 3, 8, 9.) Specifically, he has highlighted the portion of the grievance which states: "I thought it best to start this appeal on a new grievance in hopes you follow your own policy and inmate rights and get back to me within the 10 days." (Id. at 8.) He has also highlighted the portion of the grievance which states: "I also have no idea what [j]ail [s]taff I should talk to on this matter." (Id. at 9.) Based on these highlighted portions, Plaintiff argues that his grievance filed on August 27,

15

2020 (i.e., grievance number 20-00557), was not a grievance, but rather, an appeal of his prior grievance filed on July 23, 2020 (i.e., grievance number 20-00497). (Id. at 8-9.)

However, the Court finds that Plaintiff's argument is misplaced. As explained above, proper exhaustion under the PLRA "mean[s] 'complet[ing] the administrative review process in accordance with the applicable procedural rules[.]'" See Downey, 968 F.3d at 305 (quoting Woodford, 548 U.S. at 88). And here, the applicable procedural rules were supplied by the grievance policy that was in place at FCJ during the period of time relevant to Plaintiff's second amended complaint. As reflected by the record, however, Plaintiff did not follow that policy.

More specifically, the relevant FCJ policy states that, after an inmate receives the initial response to his grievance, and if that "inmate is not satisfied with the decision made, **the inmate will be responsible for appealing using the grievance form**." (Doc. No. 90-4 at 4 ¶ 7.1. (emphasis added).) The policy further states that "[t]he form, **if resubmitted**, will be sent to the Deputy Warden or their designee[, and] [t]hey will ordinarily respond within 10 business days." (Id. at 4 ¶ 7.2 (emphasis added).) Here, however, Plaintiff did not appeal either one of Sterner's initial responses by using, or resubmitting, the grievance form he filed on July 23, 2020 (i.e., grievance number 20-00497). Instead, he filed his purported "appeal" on a separate grievance form to which prison staff assigned a new inmate grievance number of 20-00557. In taking this particular approach, Plaintiff did not comply with FCJ's grievance policy, and this ultimately resulted in a procedural default of his Sixth Amendment claim against Defendant Park. Thus, the Court is unpersuaded by Plaintiff's initial argument seeking to overcome his procedural default.

### b.  FCJ's Response to Plaintiff's Inmate Grievances

#### i.  The Individual Who Initially Responded to Plaintiff's Inmate Grievances

Next, Plaintiff disputes why the "appeal" he filed (i.e., grievance number 20-00557) did not "go to jail staff." (Doc. No. 95 at 3, 4.) More specifically, he seems to suggest that because his "appeal" did not "go to jail staff[,]" prison officials did not comply with their own grievance policy. (Id.) The FCJ inmate grievance form itself provides, however, that at "Step 1" of the administrative review process, it is the "Correctional Treatment Specialist" who will respond to the inmate's grievance. (Doc. No. 90-5 at 19, 23.) And, here, the record reflects that a Treatment Specialist at FCJ (i.e., Sterner) did, in fact, respond to both of Plaintiff's grievances. Thus, the Court fails to see any merit in this argument.

In a similar vein, Plaintiff argues that there is a conflict between FCJ's inmate grievance form and inmate handbook. (Doc. No. 95 at 4.) In support, he alleges that the inmate handbook requires the Director of Inmate Management to initially respond to the inmate grievance under "Step 1[,]" but that, in this case, Ms. Lensbower, the relevant Director of Inmate Management, did not issue the response. (Id. at 4-5.) Plaintiff attempts to use this inconsistency between the inmate grievance form and inmate handbook as a basis to argue that FCJ prison staff did not comply with their own procedural rules. (Id. at 4.) The Court again is unpersuaded.

While it is certainly true that "prison officials must strictly comply with their own policies[,]" see Downey, 968 F.3d at 305, the fact that a response was issued by an FCJ Treatment Specialist as opposed to an FCJ Director of Inmate Management is of no consequence to the Court because it does not change the fact that Plaintiff received an initial response in accordance with the procedural rules set forth in the relevant FCJ grievance policy. Additionally, to the extent that such an inconsistency exists between the inmate grievance form

17

and inmate handbook, the Court notes that Plaintiff had the responsibility to proceed cautiously by exhausting his administrative remedies. See id. (stating that "[w]hen an administrative process is susceptible [to] multiple reasonable interpretations, . . . the inmate should err on the side of exhaustion" (citation and internal quotation marks omitted)). As such, the Court finds that this argument also fails to provide a sufficient basis to excuse Plaintiff's procedural default of his Sixth Amendment claim.

### ii. When FCJ Staff Responded to Plaintiff's Inmate Grievances

Finally, Plaintiff argues that, per FCJ's relevant grievance policy, prison staff did not timely respond to the grievance that he filed on July 23, 2020 (i.e., grievance number 20-00497). (Doc. No. 95 at 6-7.) Plaintiff's argument, however, is not supported by the record before the Court. More specifically, the undisputed material facts reflect that: Plaintiff's grievance was received by FCJ staff on July 31, 2020 (Doc. No. 90 ¶ 18); Sterner responded to the grievance on August 13, 2020 (id. ¶ 19); and Sterner's response was issued within ten (10) business days, as there are less than ten (10) business days between July 31, 2020, and August 13, 2020 (id. ¶ 21). Thus, based upon this undisputed record, the Court finds that prison staff timely responded to Plaintiff's initial grievance.

Although not expressly argued by Plaintiff, the Court reaches the same conclusion with respect to Plaintiff's second grievance filed on August 27, 2020. More specifically, the undisputed material facts concerning this second grievance reflect that: Plaintiff's second grievance was received by FCJ staff on August 28, 2020 (id. ¶ 25); Sterner responded to this grievance on September 14, 2020 (id. ¶ 26); and Sterner's response was issued within ten (10) business days because (a) there are ten (10) business days between August 28, 2020, and September 14, 2020, and (b) FCJ observed September 7, 2020, as a holiday and not as a business

day (id. ¶ 28). Thus, the Court finds, once again, that prison staff also timely responded to Plaintiff's second grievance.

Accordingly, for all of these reasons, the Court concludes that prison staff responded to Plaintiff's grievances in accordance with the response times set forth in the FCJ grievance policy that was in effect during the period of time relevant to Plaintiff's second amended complaint. As such, Plaintiff's final argument does not provide a sufficient basis to excuse his procedural default.

### c. Conclusion as to Procedural Default

As discussed above, "[a]n administrative remedy is unavailable when it 'operates as a simple dead end[,] . . . is so opaque that it becomes, practically speaking, incapable of use, or when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" See Downey, 968 F.3d at 305 (quoting Shifflett, 934 F.3d at 365). The Court, having carefully reviewed the facts of record, does not find that administrative remedies were unavailable to Plaintiff at FCJ. Indeed, Plaintiff had the burden of establishing that such remedies were unavailable, and he simply has not done so. Consequently, the Court concludes that he has procedurally defaulted his Sixth Amendment claim against Defendant Park. As such, the Court will grant Defendant Park's motion for summary judgment.

## IV. CONCLUSION

For all of the foregoing reasons, the Court will deem Plaintiff's motion for summary judgment withdrawn, and the Court will grant Defendant Park's motion for summary judgment. An appropriate Order follows.